263 N.J. Super. 287 (1993)
622 A.2d 935
IRA MOYE AND ANNETTE MOYE, PLAINTIFFS-APPELLANTS,
v.
RICHARD P. PALMA; JOSE JIMINEZ; X-L PLASTICS, INC.; ARNEL TRUCKING INC.; BLUME, VAZQUEZ, GOLDFADEN, BERKOWITZ, OLIVERAS & DONNELLY, A PROFESSIONAL CORPORATION, ATTORNEYS-AT-LAW; GOLDSTEIN, BALLEN, O'ROURKE & WILDSTEIN, A PROFESSIONAL CORPORATION, ATTORNEYS-AT-LAW, JOHN DOE, RICHARD ROE & ABC COMPANY(S), (FICTITIOUS PERSONS AND ENTITIES WHOSE PRESENT IDENTITIES ARE UNKNOWN TO PLAINTIFF(S) JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1993.
Decided March 31, 1993.
*288 Before Judges KING, BRODY and LANDAU.
Alfred E. Fontanella argued the cause for appellants (Fontanella & Benevento, attorneys; Mr. Fontanella, on the brief).
John W. Reinman argued the cause for respondents (Lamb, Hartung, Kretzer, Reinman & DePascale, attorneys; Mr. Reinman, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
On leave granted, plaintiffs Ira Moye and Annette Moye appeal from choice of law orders which determined that New Jersey law must govern respecting comparative negligence and owner-liability issues in their action which seeks recovery against the defendants for injuries suffered by Ira Moye (Moye) in a New York vehicular accident. The Moyes' suit asserts causative negligent conduct by some or all of the defendants in violation of portions of the New York Traffic Act. Upon weighing the respective governmental interests, we conclude on the facts of this case, that New York local law, the lex loci, should here govern, and so reverse.
*289 Moye, a New Jersey resident, was employed by MetPath[1], a New York corporation, operating out of its Teterboro, New Jersey office. Every working evening, he drove a van into New York where, operating on a regular route, he collected specimens for laboratory analysis by MetPath from various New York locations. He would ordinarily depart from Teterboro at 4:00 p.m., returning about 1:00 a.m., at the end of his shift.
Defendant X-L Plastics, Inc. is a New Jersey corporation which ships plastics to customers in a tractor-trailer rig owned by Arnel Trucking. The rig is maintained by X-L and driven by its employee, Jose Jiminez, who is also a New Jersey resident. Although the motion judge was under the impression that Arnel Trucking is a New Jersey corporation, Moye's attorney submitted to him, on motion for reconsideration, uncontested information from the Secretary of State showing that Arnel is not incorporated in this state.
On February 25, 1987, X-L dispatched Jiminez to deliver a trailer load of plastics to its New York customer, Jad Plastics, located in Whitestone, New York. X-L regularly makes such deliveries to Jad.
The trailer caught fire and burned on 20th Avenue in Queens. New York fire and police units responded. After the fire was extinguished, defendants off-loaded the shipment, but failed to move the burned-out trailer or to provide appropriate warning devices or signals. For purposes of the motions, the trailer may be deemed to have remained in a travel lane of the roadway in violation of Federal I.C.C. regulations and New York statutes[2] which require warning signals, such as reflectors, *290 flashing lights, flares, or appropriate channelization. At about 10:00 p.m. that evening, Moye was driving a MetPath van on his regular rounds when he crashed into the darkened trailer on 20th Avenue and was injured.
Moye's workers' compensation petition was filed in the State of New Jersey. He brought this negligence action against defendants in the State of New Jersey, naming among others, Jiminez (the driver), Arnel (the rig owner), and X-L (the shipper-operator). The issue of Moye's comparative fault was brought into issue by defendants.
Defendants have conceded that provisions of the New York Traffic Act govern the duties owed by the respective parties. Moreover, there appears to be no open issue respecting ability to hold the owner or operator liable for negligence of its driver under the law of either New Jersey or New York. Thus, there are no conflicts questions presented on appeal respecting owner liability nor as to which local law should govern the duties owed to and by persons using New York roads.
There is, however, a genuine conflict between the laws of New York, locus of both the underlying injury and the conduct giving rise to the injury, and New Jersey, the forum state and domicile of the injured parties, on the question of comparative fault. As recognized by the motion judge, New York subscribes to a pure comparative negligence theory in which contributory negligence does not bar recovery but "the amount of damages otherwise recoverable is diminished in the proportion which culpable conduct attributable to the claimant bears to the culpable conduct which caused the damages." N.Y.Civ.Prac. L & R, Section 1411 (McKinney 1976). By contrast, New Jersey has adopted a modified approach, which, while not absolutely barring recovery by a claimant who has been contributorily negligent, requires that it be established that the claimant's "negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the *291 combined negligence of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1.
In this case, the motion judge engaged in the choice of law weighing process required under New Jersey conflict of laws principles. He correctly recognized that although the traditional choice of law in tort cases is the law of the place where the wrong occurred, the simplicity and certainty of that rule has given way to adoption of the more flexible governmental interest analysis. See Pfau v. Trent Aluminum Co., 55 N.J. 511, 263 A.2d 129 (1970).
Although noting our recent decision in O'Connor v. Busch Gardens, 255 N.J. Super. 545, 605 A.2d 773 (App.Div. 1992), and New York's legitimate interest in determining the standard of care to which all motorists upon its roads must adhere, the motion judge concluded that New York's "interest in the application of rules which will determine the ultimate issue of the quantum of negligence necessary to authorize or preclude recovery and damages, simply is not as great as those of New Jersey where the parties all reside and where they have sought redress." In so ruling, the motion judge relied upon Sabell v. Pacific Intermountain Express Co., 36 Colo. App. 60, 536 P.2d 1160 (1975). Essentially, the judge concluded that although the State of New York "does not want burnt out hulks of tractor-trailers littering its highways ... in this matter New York's interest ends there." He held that New Jersey's interest in affording proper compensation to injured New Jersey residents is the dominant interest in the case by reason of the residency of the parties, and because this is "where they have sought redress."
Thus, there is no dispute as to the underlying conflicts of laws principles here applicable. The motion judge and the parties have recognized the governmental interest analysis as explained in Veazey v. Doremus, 103 N.J. 244, 248, 510 A.2d 1187 (1986), and the fact that New Jersey does have a legitimate interest in fair compensation of injured New Jersey residents. *292 See Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Pine v. Eli Lilly & Co., 201 N.J. Super. 186, 492 A.2d 1079 (App.Div. 1985). See also Restatement (Second) of Conflicts of Laws, Sections 145, 146, and 164(1), (2) (1969). Significantly, the Restatement conclusion stated in Section 164(2) is that application of a test weighing respective governmental interests will usually result in a determination that the local law applicable to determine the preclusive effect of a plaintiff's contributory fault be that of the state where the injury occurred.
Here, if plaintiff's fault contributed to causation, this could, under New Jersey local law, preclude recovery entirely, depending upon the percentage of such fault. There would be no risk under New York local law of a total bar to plaintiff's recovery so long as some causative negligence is attributed to any of the defendants.
The choice of law decision in cases of this nature requires a sensitive and particularized qualitative analysis of contacts in each state. In the Moyes' case, the occurrence of the accident in New York was not merely fortuitous. The key parties regularly engaged in their occupations and business in the State of New York. In fact, Moye spends most of his working hours engaged in driving on New York roads.
New York has expressed its strong interest in regulating safety on its streets and highways not only in its common law, but by statute. See N.Y. Vehicle and Traffic Law, Section 1201 (Consol. 1986). In Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814 (1920), Judge Cardozo held that violation of a statute such as the New York traffic law constitutes negligence per se, not merely evidence of negligence. This remains the New York view. McConnell v. Nabozny, 110 A.D.2d 1060, 489 N.Y.S.2d 24 (1985).
As regular users of New York roads, both Moye and the defendants have an important interest in the enforcement of the duties established by New York traffic laws for the protection of all road users. New York's own interest in such *293 enforcement needs no discussion, in light of the strong policy evidenced by its per se rule.[3]
A state makes credible its rules respecting duties owed on its roadways primarily by providing for and regulating the tort remedies for breaches of those duties. In Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412 (1973), our Supreme Court considered choice of law issues respecting applicable statutes of limitation, including an argument advanced that while rights (i.e., duties) should follow lex loci, remedies must be governed by forum law. However, quoting Leflar, American Conflicts Law, Sec. 127 (1968), approvingly, it noted that "A right for which the legal remedy is barred is not much of a right." Heavner, supra, at 137, 305 A.2d 412. Speaking for the court in Daily v. Somberg, 28 N.J. 372, 146 A.2d 676 (1958), Justice Jacobs said:
It is well recognized that where all of the tortious conduct and its consequences take place within a single foreign state the law of that state  the place of the wrong  will control. See Masci v. Young [109 N.J.L. 453, 162 A. 623] supra; Clement v. Atlantic Casualty Ins. Co., 13 N.J. 439, 442 [100 A.2d 273] (1953); Restatement, Conflict of Laws § 377 et seq. (1934). This conflict of laws principle gives fair recognition to the foreign state's legitimate interests and to the sound public policy which dictates that the incidents of a transaction should be determined by a significantly connected body of law. In addition, it well serves the ends of certainty, uniformity and predictability.
Id. 28 N.J. at 379-380, 146 A.2d 676.
Later, in Ostrowski v. Azzara, 111 N.J. 429, 545 A.2d 148 (1988), the Court said, "Strictly speaking, comparative `fault' is *294 not really a fair measure of comparative contribution to damages. Comparative negligence is generally `viewed as a liability doctrine, rather than a damage doctrine.'" Id. at 443 n. 5, 545 A.2d 148.
In O'Connor, supra, 255 N.J. Super. at 549, 605 A.2d 773, Virginia, a contributory negligence state, was the locus of an amusement park accident suffered by a New Jersey resident who sued in this state. We observed that the choice of law decision as to applicability of New Jersey's comparative fault statute on the Virginia contributory negligence standard must take account of our legitimate interest in fair compensation of injured New Jersey residents. Nonetheless, we held that "Virginia's legitimate interest in discouraging unsafe local property conditions and unsafe conduct is directly related to the substantive issue of comparative vs. contributory negligence on which the conflicts issue focuses. New Jersey's concern for its injured citizens ... cannot exempt them from other states' law setting standards for local conditions and conduct." In short, we concluded, consistently with the Restatement view, that the place of alleged negligence on the part of all parties has a more significant relationship to a comparative negligence conflicts issue than the forum state has by virtue of residence of the parties.
In this case, there are the added factors of probable breach of an important New York road safety statute, and the status of the New Jersey parties as daily, not incidental, users of New York roads. Emphasis on the place of the injurious conduct for choice of the proper local comparative negligence law in this case also accords with the notion that it means little to recognize existence of a strong right or a duty if we deny or drastically alter the remedy for its breach. Further, choice of New York local law is consistent with Ostrowski's recognition of comparative negligence as primarily a doctrine of liability rather than damages, and with the Daily v. Somberg rationale quoted above.
*295 Based upon the foregoing analysis, we conclude that there are even more compelling reasons in this case than there were in O'Connor to adopt for purposes of choice of the applicable comparative law standard the local lex loci delicti, New York's Civil Practice L & R, Section 1411.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] MetPath is a trade name.
[2] 49 CFR, Parts 383, 390-397; 15A NYCRR, Motor Vehicles, Parts 43, 44, 45, 52; N.Y. Vehicle and Traffic Law, Sections 100, 125 and 311 (McKinney 1986); N.Y. Vehicle and Traffic Law, Section 375(17), (18-a), (19), (40)(a, b) and Section 376 (1)(a, b) (4) (McKinney 1986).
[3] Our research into New York case law has also disclosed that the question of whether responding police took adequate measures to warn motorists of a disabled vehicle or to remove it, has been held to be one for the jury. Anderson v. Muniz, 125 A.D.2d 281, 508 N.Y.S.2d 567 (1986). This is a factor which may not be lost upon defendants when Moye seeks to establish relative causative fault. Under New Jersey law, only fault of the parties is compared. N.J.S.A. 2A:15-5.1. The New York statutory language appears to compare the claimant's culpable conduct to "the culpable conduct which caused the damage." Although the issue has not been raised, it appears that the question of which comparative negligence statute should be applicable may have consequences other than those presented by the "pure" comparison of fault aspect of the New York law.