**Jeanne AMOROSO, in her own right, Administratrix and Administratrix Ad Prosequendum of the Estate of Michael Amoroso, Deceased, Plaintiffs,**

v.

**BURDETTE TOMLIN MEMORIAL HOSPITAL, et al., Defendants.**

Civ. A. No. 94–2799 (JEI).

United States District Court, D. New Jersey.

Oct. 11, 1995.

---

Levy, Angstreich, Finney, Baldante, Mann & Burkett by Michael Coren, Cherry Hill, NJ, for plaintiff Jeanne Amoroso.

Paarz, Master & Koernig by Robert E. Paarz, Pleasantville, NJ, for defendants Burdette Tomlin Memorial Hospital, Theresa Bridge–Jackson, M.D., and Warren Ventriglia, M.D.

George and Korin by Jay J. Blumberg, Woodbury, NJ, for defendant Vinayak M. Sabnis, M.D., P.A.

James A. Waldron, Cape May Court House, NJ, for defendant Carmen J. Alameno, M.D.

Slimm and Goldberg by Robert M. Kaplan, Westmont, NJ, for defendant North Wildwood Rescue Squad.

Carson, Astorino, McLarty, Howarth & Demille by Robert A. McLarty, Jr., Trenton, NJ, for defendants Donald and Mary Loder.

Stagliano and Deweese by Ronald J. Stagliano, Wildwood, NJ, for defendant Twin Power, Inc., t/a A.C. Chambers, Real Estate.

Goldfein and Joseph by Roseann Lynn Brenner, Princeton, NJ, for defendant Stephen Freeman.

Swartz, Campbell & Detweiler by Daniel D. Krebbs, Philadelphia, PA, for defendant Michael James Discher.

Gruccio, Pepper, Giovinazzi, DeSanto & Farnoly, P.A. by E. Edward Bowman, Vineland, NJ, for defendant Michael Jerome Quinn.

## AMENDED OPINION

IRENAS, District Judge:

Michael Amoroso, a Pennsylvania citizen, was stabbed on June 16, 1992, during a fight in North Wildwood, New Jersey at a "Senior Week" party. He was transported by the North Wildwood Rescue Squad to Burdette Tomlin Memorial Hospital for treatment. Amoroso died on June 17, 1992, while on the operating table. On June 15, 1994, Jeanne Amoroso, the mother of the deceased, brought wrongful death and survival damage claims against the various health care providers who rendered assistance to Michael Amoroso subsequent to the stabbing and immediately prior to his death. She also named as defendants the owners and property managers of the duplex where the stabbing occurred.

The plaintiff made a motion in limine on July 27, 1995, to determine the law applicable to her wrongful death and survival damages claims. She argues that Pennsylvania law should apply to the accident because there is no true conflict between Pennsylvania and New Jersey law and because, if there is a conflict, Pennsylvania has a greater interest in the outcome of the case. Defendants respond that there is a conflict between the states and that New Jersey law should apply because its interests in the result surpass Pennsylvania's interests.

The Court finds that there is a true conflict between Pennsylvania and New Jersey law. Although the wrongful death statutes of both states are identical, New Jersey's survival statute, N.J.S.A. 2A:15–3, does not permit the recovery of prospective lost earning capacity which is permitted in Pennsylvania under 20 Pa.C.S.A. § 3373 and 42 Pa. C.S.A. § 8302. The New Jersey Survival Act will be applied to determine the recovery under plaintiff's survival claim because i) all major acts occurred in New Jersey, ii) the deceased's presence in New Jersey was not fortuitous, and iii) New Jersey has an interest in determining the extent of the recovery to be afforded to non-residents who vacation in this state as well as in the extent of liability of New Jersey medical services professionals and property owners.

## STATEMENT OF FACTS

Donald and Mary Loder own property at 209 E. 17th Street in North Wildwood, New Jersey which they rent to vacationers at the New Jersey shore. Powell, Inc. (the successor to McAlarnen Realty, Inc.) and Twin Power, Inc. (known as A.C. Chambers, Real Estate) were rental agents for the property. The Loders and the agents are New Jersey citizens. On November 3, 1991, A.C. Chambers, Real Estate acted as agent and executed lease agreements with Laura Maguire and Michael Seeds, high school students in Pennsylvania, to lease the two units at 209 E. 17th Street for the week of June 13, 1992, to June 20, 1992.

On June 14, 1992, the decedent, Michael Amoroso, travelled with friends to Cape May, New Jersey to participate in "Senior Week," a time when graduating seniors from Pennsylvania high schools go to New Jersey shore towns to celebrate. Michael Amoroso visited friends at 209 E. 17th Street in North Wildwood, New Jersey on June 16, 1992. Stephen Freeman, Michael Quinn, Michael Discher, and Paul Pellechia were also visiting with friends there at the same time.

While at the house, Michael Amoroso and Stephen Freeman fought. Freeman contends that he was attacked by Discher, Quinn, and Pellechia. Amoroso was stabbed in the chest by Freeman during the fight. The North Wildwood Rescue Squad and Atlantic/Cape Mobile Intensive Care Consortium were contacted for assistance. The North Wildwood Rescue Squad transported Michael Amoroso to the Emergency Department of Burdette Tomlin Memorial Hospital in Cape May Court House, New Jersey.

Theresa Bridge–Jackson, M.D. and Warren Ventriglia, M.D. treated Amoroso in the emergency room of the hospital at approximately 11:00 p.m. on June 16, 1992. Both doctors are licensed to practice medicine in New Jersey and they work in the Cape May area. Amoroso was moved to the operating room of Burdette Tomlin Memorial Hospital by 11:38 p.m. Carmen Alameno, M.D. and Vinayak Sabnis, M.D., surgeons in the Cape May area who are licensed in New Jersey and are on staff at the Burdette Tomlin Memorial Hospital, performed a thoracotomy and sutured the right ventricle and right atrial appendage. Michael Amoroso died in the operating room at about 12:25 a.m. on June 17, 1992.

## PROCEDURAL HISTORY

The plaintiff, Jeanne Amoroso, is the mother of the decedent and has been granted Letters of Administration for the Estate of Michael Amoroso, deceased, by the Register of Wills of Delaware County, Pennsylvania, and Letters of Administration Ad Prosequendum for said decedent by the Surrogate of Cape May County. On June 15, 1994, plaintiff instituted an action against Burdette Tomlin Memorial Hospital, Carmen J. Alameno, M.D., Vinayak M. Sabnis, M.D., Vinayak M. Sabnis, M.D., P.A., Theresa Bridge–Jackson, M.D., Warren Ventriglia, M.D., North Wildwood Rescue Squad, Donald and Mary Loder, Powell, Inc., Twin Power, Inc., and a variety of John/Jane Doe defendants. These defendants are all New Jersey citizens.

North Wildwood Rescue Squad brought a third-party claim against Stephen Freeman and Atlantic/Cape Intensive Care Unit. Stephen Freeman brought a fourth-party claim against Michael Jerome Quinn, Michael James Discher, and Paul Joseph Pellechia, all of whom were allegedly involved in the fight during which Michael Amoroso was stabbed. Atlantic/Cape Intensive Care Unit is a New Jersey citizen while Freeman, Quinn, Discher, and Pellechia are Pennsylvania citizens.

## DISCUSSION

### A. *Choice of Law Rules*

In a diversity action, a federal district court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *McFarland v. Miller*, 14 F.3d 912, 917 (3d Cir.1994). New Jersey applies a "governmental interest" test to choice of law issues. *Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187 (N.J.1986). Under this test, the court must first "determine whether a conflict exists between the law of the interested states." *Id.* at 248, 510 A.2d at 1189. This determination must be made "on an issue-by-issue basis." *Id.*

If the court finds that a conflict does exist, it must then determine "the state with the greatest interest in governing the particular issue." *Id.* at 248, 510 A.2d at 1189. To do this, the court must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties." *Id.* It is "the qualitative, not the quantitative, nature of a state's contacts [that] ultimately determines whether its law should apply." *Id.*, at 248, 510 A.2d at 1190.

### B. *Choice of Survival Statute*

#### 1. **Existence of a Conflict**

The New Jersey Survival Act, N.J.S.A. 2A:15–3 (West 1987), allows for a recovery of damages for pain and suffering between the time of injury and death, while the Pennsylvania Survival Act, 20 Pa.C.S.A. § 3373 (1982) and 42 Pa.C.S.A. § 8302 (1982), allows recovery not only for those damages but also for loss based on the prospective earning capacity of the deceased. *See Bortner v. Gladfelter*, 302 Pa.Super. 492, 448 A.2d 1386 (1982). Where the decedent is a young person with a limited earning history and no

dependents this difference is significant. In urging the applicability of Pennsylvania law plaintiff argues that New Jersey has no interest in the administration of estates of non-resident decedents, *Foster v. Maldonado,* 315 F.Supp. 1179 (D.N.J.1970), and that New Jersey's law was passed to establish a recovery for plaintiffs, not to limit the liability of defendants, *Pollock v. Barrickman,* 610 F.Supp. 878 (D.N.J.1985). *See also, Canino v. New York News, Inc.,* 96 N.J. 189, 475 A.2d 528 (1984) (reviewing the history of tort remedies in the context of whether an action for liable survives the death of the defamed party).

District courts in New Jersey have addressed this issue and have disagreed in their interpretation of the policies underlying the New Jersey survival statute. Judge Gerry has suggested that the legislative history of the survival statute demonstrates that it was principally, if not solely, passed as a remedial measure to create a cause of action for survivors of a decedent and not as a limitation of liability for defendants. *Pollock,* 610 F.Supp. at 880–81. *See also, Canino,* 96 N.J. at 191–94, 475 A.2d at 529–30. On the other hand, Judge Brotman and Judge Cohen have found that the survival statute was intended to protect New Jersey resident defendants from large recoveries. *Mathis v. Motley,* 649 F.Supp. 38, 40 (D.N.J.1986) (Brotman, J.) (citing *Colley v. Harvey Cedars Marina,* 422 F.Supp. 953, 955 (D.N.J.1976) (Brotman, J.) and *Nolen v. Found. and Structures,* No. 83–1372, 1984 WL 3580, DCTU database (D.N.J. April 19, 1984) (Cohen, J.)).

■ The Third Circuit has recognized that a wrongful death statute inherently concerns the rights of both parties:

Inasmuch as N.J.Stat.Ann. § 2A:31–5 (West Supp.1987) sets forth the type of damages that may be recovered in a wrongful death action, it reflects the New Jersey Legislature's determination both of what is fair for a plaintiff to recover and a defendant to pay in such a case. Accordingly, New Jersey's interest in this case is no less that Florida's and the judge correctly held that its law of damages should be applied.

*Petrella v. Kashlan,* 826 F.2d 1340, 1343 (3d Cir.1987). *See also Richardson v. Hill,* No. 89–5022, 1991 WL 149872, 1991 U.S.Dist. LEXIS 10678 (D.N.J. July 29, 1991) (Fisher, J.); *Scuorzo v. Spinazzola,* No. 89–4626, 1991 WL 5741, 1991 U.S.Dist. LEXIS 518 (D.N.J. January 16, 1991) (Wolin, J.). Similarly, New Jersey and Pennsylvania were concerned with the rights of both plaintiffs and defendants when they passed their survival statutes. These states dealt with the same societal concerns in creating a cause of action for survivors. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 126 (5th ed. 1984). A true conflict exists not because the underlying purposes of the two laws differ. Both laws attempt to balance a state's interest not only in providing a recovery for wrongful death, but also in determining the extent of the tortfeasor's liability. But because each state resolved differently the conflicting societal interests involved in a law measuring damages, a true conflict exists in the survival laws of New Jersey and Pennsylvania.

### 2. Governmental Interest Analysis

#### a. Law of the State Where the Injury Occurred

■ Although New Jersey has abandoned the strict application of the rule of *lex loci delecti* in tort cases, *see Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 526, 263 A.2d 129, 136–37 (1970), it has recognized that the place of the injury is an important factor to consider in determining what state has the greatest interest in a case. *Mowrey v. Duriron Co., Inc.,* 260 N.J.Super. 402, 413, 616 A.2d 1300, 1305 (App.Div.1992). The Second Restatement of Conflict of Laws indicates that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless with respect to a particular issue, some other state has a more significant relationship" under the general conflict principles set forth in § 6. Restatement (Second) of Conflict of Laws § 146 (1971). It is noted in a later Restatement comment dealing with damages that "[t]he state of conduct and injury will not, by reason of these contacts alone, be the state that is primarily concerned with the measurement

of damages in a tort action." *Id.*, at § 171 cmt b. *See Cianfrani v. Kalmar–Ac Handling Systems, Inc.*, No. 93–5640, 1995 WL 563289 (D.N.J. Sept. 11, 1995) (Irenas, J.).

 In determining whether to apply the law of the state where the injury took place, a court will consider whether the occurrence of the accident there was "merely fortuitous" or whether "[t]he key parties regularly engaged in their occupations and their business" in that state. *Moye v. Palma*, 263 N.J.Super. 287, 292, 622 A.2d 935, 938 (App. Div.1993). The Third Circuit has held that when "the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance and in some instances may be determinative." *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir.1986), *quoted in Cannon v. Hilton Hotels Corp.*, 664 F.Supp. 199, 200 (E.D.Pa.1987).

 Here the deceased had purposefully chosen to visit the New Jersey shore for Senior Week. He did not merely pass through New Jersey in a car or arrive in the state by happenstance. *See, e.g., Pollock*, 610 F.Supp. 878 (car accident in New Jersey). While his ties to New Jersey are not as extensive as those of a Pennsylvania citizen who opted to work in New Jersey or travelled into the state on a regular basis, we nevertheless find that his choice to be in New Jersey was clearly more than fortuitous. In addition, all major actions relevant to the complaint occurred in New Jersey. The deceased attended a party while in New Jersey at a house leased in New Jersey from a New Jersey property owner through a New Jersey agent. He was stabbed in New Jersey and all medical care was provided in New Jersey.

New Jersey courts have reached a similar conclusion in determining what law to apply in areas other than survival statutes. In *O'Connor v. Busch Gardens*, 255 N.J.Super. 545, 605 A.2d 773 (App.Div.1992), the court considered a personal injury suit by a New Jersey citizen who was hurt at an amusement park in Virginia. The court applied Virginia's contributory negligence law rather than New Jersey's comparative negligence law because it found that Virginia had an interest in

discouraging unsafe local property conditions and unsafe conduct. *Id. See also Mowrey v. Duriron Co., Inc.*, 260 N.J.Super. 402, 616 A.2d 1300 (App.Div.1992) (applying a choice of law analysis in decision to dismiss case because Connecticut was sight of the event and had greater interest in the outcome). These cases properly recognize that the interest of the state where the accident occurred in protecting those within its boundaries will normally outweigh the interest of the plaintiff's residence in providing its citizens with recovery, especially where the plaintiff has a significant relationship with the state where the accident occurred.

**b. The Nature of the States' Interests**

Pennsylvania clearly has an interest in the well-being of its citizens and the administration of its decedents' estates. *Cannon*, 664 F.Supp. at 201 (*citing Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964)). Michael Amoroso was a resident of Pennsylvania at the time of his death. His mother still resides there, and she is administering his estate there. This gives Pennsylvania an interest in having its survival statute applied to this case.

However, every state has an interest not only in the welfare of its own citizens, but also in the welfare of non-citizens who are temporarily in the state for a lawful purpose, particularly where that presence is non-fortuitous. *Moye v. Palma*, 263 N.J.Super. 287, 622 A.2d 935 (App.Div.1993); *Blakesley v. Wolford*, 789 F.2d 236 (3d Cir.1986). Tourism at the "Jersey Shore" is a major industry in this state, and New Jersey has a significant interest in the well-being of the tourists who travel to the state each year to enjoy vacation areas such as North Wildwood. It is certainly in New Jersey's interest to ensure the welfare of these tourists. This interest includes a concern that a non-resident's estate be adequately compensated for harms that befall him in New Jersey.

Were the court to consider the relative state interests solely from the plaintiff's point of view, both New Jersey and Pennsylvania would have significant interests in applying their own survival statute, a law which deals with the measurement of damages as op-

posed to defining what actions will impose liability. *See* discussion *supra* section B.2(a). However, New Jersey also has an interest in the measurement of damages for which its resident medical service providers and homeowners can be held liable, an interest of no real concern to Pennsylvania. All of the medical defendants in this case are New Jersey citizens who have chosen to work in the state and who have the right to expect that New Jersey law will govern their actions. New Jersey property owners and agents also have an expectation that any disputes regarding persons injured on New Jersey property will be judged under New Jersey law.

#### c. Risks of Travel to Another State

Plaintiff argues that Pennsylvania law should apply because plaintiff is a Pennsylvania citizen, the decedent was a Pennsylvania citizen, the decision to travel to New Jersey was made in Pennsylvania by a group of Pennsylvania citizens, and many of the personal relationships underlying this case were forged in Pennsylvania. Citizens do not, however, carry their home state's laws with them wherever they go. As Professor Cavers stated, "By entering the state or nation, the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created." D.F. Cavers, *The Choice-of-Law Process* 146–47 (1965), *cited in Colley*, 422 F.Supp. at 957. *See also, Cipolla v. Shaposka*, 439 Pa. 563, 567, 267 A.2d 854, 856 (1970); *Blakesley*, 789 F.2d at 242–43. Even though the fight that resulted in Michael Amoroso's death was between Pennsylvania citizens, the parties sued by the plaintiff are all New Jersey citizens and the claims she makes are based on actions that occurred in New Jersey.

#### C. *Choice of Wrongful Death Statute*

 There is no conflict between the wrongful death laws of New Jersey and Pennsylvania. N.J.S.A. 2A:31–1 *et seq.*; 42 Pa.C.S.A. § 8301. The two states allow the same recovery of damages in a wrongful death action. *See, e.g., Scuorzo v. Spinazzola*, No. 89–4626, 1991 WL 5741, 1991 U.S.Dist. LEXIS 518 (D.N.J. January 16,

1991). New Jersey's law will be applied to plaintiff's wrongful death claim.

### CONCLUSION

The court finds that there is a true conflict between the survival statutes of Pennsylvania and New Jersey, as Pennsylvania allows recovery for lost potential earning capacity while New Jersey does not. New Jersey has a greater interest in applying its law to the survival claim against the defendants, all of whom are New Jersey citizens, because the significant events regarding the claim occurred in the state and because New Jersey has a strong interest both in the extent of the recovery of non-residents vacationing in the state and in the extent of the liability of its domestic medical providers and property owners. Finally, because there is no conflict between the wrongful death laws of New Jersey and Pennsylvania, the court will apply New Jersey's law to this claim.