James BOYES and Eleanor
Clouser, Plaintiffs,

v.

GREENWICH BOAT WORKS, INC., Albe-
marle Boats, Gregory Poole Equipment
Co., a/k/a Gregory Poole Power Systems,
Caterpillar, Inc., Defendants.

Civil Action No. 97–2085(JEI).

United States District Court,
D. New Jersey.

Nov. 20, 1998.

Mattioni, LLP by Eugene Mattioni, Stephen J. Galati, Westmont, NJ, for Plaintiffs.

Nicoletti Hornig & Sweeney by Julia M. Moore, Allendale, NJ, for Defendant Greenwich Boat Works, Inc.

Carpenter, Bennett & Morrisey by William A. Carpenter, Jr., Newark, NJ, for Defendants Albemarle Boats, Gregory Poole Equipment Co., and Caterpillar, Inc.

## OPINION

IRENAS, District Judge.

Presently before the Court are four motions on behalf of the defendants: (1) defendants' choice of law motion that Pennsylvania and not New Jersey law should govern count six; (2) defendants' motion to dismiss plaintiffs' claim for punitive damages; (3) defendants' motion for partial summary judgement; and (4) defendants' motion to exclude expert testimony. At issue in this diversity of citizenship case, 28 U.S.C. § 1332, are plaintiffs' unmet expectations regarding the performance of a 1996 thirty two-foot Albemarle sport fishing vessel powered by two Caterpillar 300 horsepower (hp) 3116 model diesel engines.

## I. BACKGROUND

Plaintiffs James Boyes ("Boyes") and Eleanor Clouser ("Clouser") attended the 1995 Philadelphia Boat Show which was held at the Philadelphia Civic Center from January 21 to 29, 1995. At the show, plaintiffs met Marvin Hitchner ("Hitchner"), president of defendant Greenwich Boat Works, Inc.

("Greenwich"). Hitchner, an authorized dealer of defendant Albemarle Boats ("Albemarle"), was displaying Albemarle boats at the boat show along with Albemarle principal and representative, Scott Harrell ("Harrell"). Plaintiffs allege that, upon expressing interest in purchasing an Albemarle boat, Hitchner gave them certain information concerning the speed, fuel consumption and range of the thirty two-foot Albemarle Fly–Bridge fishing boat. Boyes contends that he informed Hitchner of his need for a boat capable of obtaining a range and speed suitable for participating in sport fishing tournaments off the coast of New Jersey. According to Boyes, Hitchner told him that the thirty two-foot Albemarle Fly–Bridge fishing boat was available with Caterpillar 3116 engines, generating 300 hp, which would enable the boat to travel at 30 knots with a 300 nautical mile range. Boyes also contends that Hitchner informed him that the cruising speed of the engine was 2600 RPM's, that at this throttle the boat would travel at 28 knots with a 400 nautical mile range, and that at 20 to 22 knots the boat would have a 500 nautical mile range. Plaintiffs allege that Hitchner received this information from Albemarle, which in turn had received the information from Gary White ("White") of defendant Gregory Poole Equipment Co. ("Gregory Poole"). White allegedly took the information from Caterpillar specifications. Greenwich denies that Hitchner ever represented to Boyes that the vessel would have a specific speed and range at a specific rate of RPM's. Plaintiffs also claim that any information which Hitchner gave Boyes concerning the boat's specifications and performance was received from Albemarle, Harrell, and/or from trade publications.

Following the boat show, on March 18, 1995, Boyes met again with Hitchner at Greenwich's principal place of business in Greenwich, New Jersey. Boyes alleges that Hitchner repeated his earlier representations about the boat. Plaintiffs decided to buy the boat. They signed a purchase order with Greenwich for a 1995 32–foot Albemarle, powered by twin Caterpillar Model 3116 300 hp E-rated marine diesel engines, for a total price, including sales tax, of $175,636.00. The boat's engines, twin Caterpillar Model

3116, 300 hp E-rated marine diesel engines, Serial Nos. 4KG03984 and 4kKG03987, were manufactured by defendant Caterpillar, Inc. ("Caterpillar") and were sold and delivered to defendant Gregory Poole on or about March 27, 1995. These engines, in turn, were sold and shipped by Gregory Poole to Albemarle on or about May 15, 1995 and were installed in Hull 88, a 1996, 32–foot Albemarle Convertible Hull. Manufacture of the hull and installation of the engines were performed by Albemarle at its facility in North Carolina. The finished boat was shipped to Greenwich in New Jersey on June 23, 1995. The boat, with engines installed, was then delivered to plaintiffs in July 1995 in Delaware.

According to plaintiffs, since delivery of the boat in July 1995, the boat has burned significantly more fuel than Boyes was told it would prior to the sale. They also claim that it has not performed as represented in producing horsepower, reaching top speed, and reaching specified RPM's. During the winter of 1996, plaintiffs sent the boat back to Albemarle's facility in North Carolina for repair by Albemarle and/or Gregory Poole. These repairs were allegedly unsuccessful. Despite the attempt by Albemarle and/or Gregory Poole to repair the boat in North Carolina, the boat still fails to perform to plaintiffs' satisfaction. Defendants allege that plaintiffs overload the boat and this overloading causes it to perform at lower rates of speed and higher rates of fuel consumption. The plaintiffs ceased using the boat in December 1996. They have testified that they do not intend to use the boat again and are remaining in possession of it solely as a result of this litigation. Plaintiffs have at all times kept the boat in Delaware.

On April 25, 1997, plaintiffs filed the complaint in this matter, alleging that the Albemarle boat failed to meet the performance standards defendants led them to believe it would. Based on alleged misrepresentations and warranties made by the defendants prior to the sale of the boat, plaintiffs' complaint sets forth claims against the defendants for product liability, negligence, breach of warranties for a particular purpose, breach of warranty of merchantability, breach of contract, including express and implied warranties, misrepresentation and fraud.

This Court granted Plaintiffs motion to amend the complaint to allege sixteen new factual allegations of post-sale misrepresentations. The amended complaint makes new claims that the defendants induced plaintiffs to retain possession of the boat by misrepresenting, post-sale, their ability to make adjustments and corrections to the engines in order to make them perform as promised. Plaintiffs allege that, during the course of their efforts to have the boat repaired, defendants told plaintiffs that they would fix the boat to burn the amount of fuel set forth in Caterpillar's specifications. Plaintiffs also claim that Albemarle, Gregory Poole and Caterpillar knew, as the result of fuel tests, that the boat burned more fuel than the specifications indicated, yet continued to represent to plaintiffs and the general public that the boat would perform in accordance with the published specifications. The amended complaint also sets forth new theories of liability based on the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 et seq. (West 1989), the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. (1998), and the breach of warranty and any other relevant portions of the UCC, as codified by N.J.S.A. § 12A:2–101 et seq. (West 1962).

## II. CHOICE OF LAW MOTION

In the modern commercial world, litigation often implicates transactions or events occurring in more than one jurisdiction. In this case we have a sale between a New Jersey seller and a Pennsylvania buyer of a boat which was constructed in North Carolina and docked after delivery in Delaware. Any court hearing such a case must determine what law applies to resolution of the various disputes. In a diversity action such as the present, a federal district court must apply the choice of law rules of the state in which it sits. See Day and Zimmermann v. Challoner, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); McFarland v. Miller, 14 F.3d 912, 917 (3d Cir.1994).

■ Where the parties fail to point out or establish any difference in the laws of the various jurisdictions involved in a particular case, it is proper for the court to apply the law of the forum. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 136 cmt.h (1971); *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 652 F.2d 340, 343 n. 6 (3d Cir. 1981); *Schreiber v. Camm*, 848 F.Supp. 1170, 1174 (D.N.J.1994). With respect to issues of contract, products liability, the Uniform Commercial Code, common law fraud or breach of warranty the parties have not suggested that the law of New Jersey differs from the law of any of the other jurisdictions involved in this case. However, defendants question plaintiff's reliance on the New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8–1 *et seq.*,(West 1989) arguing that the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 *et seq.* should be applied.

■ Subject to constitutional limitations, a court will generally apply the statutory law of the forum:

Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. a (1971). *See also* N.J.S.A. § 12A:1–105(1) (West 1962) (Absent agreement of the parties "this Act applies to transactions bearing an appropriate relation to this state."); *Oxford Consumer Discount Co. v. Stefanelli*, 102 N.J.Super. 549, 563–564, 246 A.2d 460, 467 (App.Div.1968), *decision supplemented by, Oxford Consumer Discount Co. v. Stefanelli*, 104 N.J.Super. 512, 250 A.2d 593 (App.Div.1969) ("we do agree … that the statute, in light of its avowed objectives, particularly as illuminated by the legislative history, evinces an unmistakable intent that any secondary mortgage loan [on New Jersey property] … be subject to the act notwithstanding execution of the loan documents out of the state and in favor of a foreign corporation"). In *Oxford*, New Jersey applied its own Secondary Mortgage Loan Act notwithstanding a strong argument

that ordinary conflict of laws principles would have dictated the application of Pennsylvania Law.

This court has little doubt that the New Jersey Legislature intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey. Courts have declared that the Consumer Fraud Act "should be construed liberally in favor of protecting consumers." *Levin v. Lewis*, 179 N.J.Super. 193, 200, 431 A.2d 157, 161 (App.Div.1981); *State v. Hudson Furniture Company*, 165 N.J.Super. 516, 520, 398 A.2d 900, 902 (App.Div.1979) (noting the "perceived need to liberally construe the act in favor of protecting consumers"). Plainly, the "act is broadly designed to protect the public." *Skeer v. EMK Motors, Inc.*, 187 N.J.Super. 465, 470, 455 A.2d 508, 512 (App. Div.1982). "The available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." *Huffmaster v. Robinson*, 221 N.J.Super. 315, 319, 534 A.2d 435, 437 (Law Div.1986) (citing *New Mea Construction Corp. v. Harper*, 203 N.J.Super. 486, 497 A.2d 534 (App.Div.1985)).

While there can be no doubt that the New Jersey legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries. Its magnificent seashore, to say nothing of casino gambling, bring millions of visitors annually to New Jersey making tourism a major industry. This industry would suffer if the state developed a reputation as a place were sellers ripped off the unsuspecting visitor.

■ As a general rule New Jersey applies a "governmental interest" test to choice of law issues. *Amoroso v. Burdette Tomlin Memorial Hosp.*, 901 F.Supp. 900, 903 (D.N.J.1995); *Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187 (1986). This test parallels the "most significant relationship" test of the *Restatement, 2d, of Conflict of Laws. See Veazey*, 103 N.J. at 251, 510 A.2d at 1191. Under this test, the court must first "determine whether a conflict exists between the

law of the interested states." *Id.* This determination must be made "on an issue-by-issue basis." *Id.* If the court finds that a conflict does exist, it must then determine "the state with the greatest interest in governing the particular issue." *Id.* To do this, the court must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties." *Id.* It is "the qualitative, not the quantitative, nature of a state's contacts [that] ultimately determines whether its law should apply." *Id.*

■ If application of these principles suggested that the law of a state other than the forum should apply to some aspect of a litigation, notwithstanding the existence of a forum statute which was intended by the legislature to be applicable to the facts of the case, constitutional considerations of full faith and credit [1] might be implicated if the local statute were in conflict with that of the applicable foreign jurisdiction. Because both New Jersey and Pennsylvania have an interest in this litigation, we must consider whether a conflict exists between the New Jersey Consumer Fraud Act and the UTPCPL. *Cf. Veazey*, 103 N.J. at 247, 510 A.2d at 1189.

■ Both statutes clearly were intended to protect purchasers from the predatory behavior of sellers. However, New Jersey's law offers more protection than Pennsylvania's in that treble damages and attorney fees are mandatory in New Jersey and discretionary in Pennsylvania. *Compare* P.S. § 201–9.2 *with* N.J.S.A. § 56:8–19 (West 1989). When dealing with the liability based on negligence, strict liability, products liability or the like, differing rules as to liability or damages generally represent genuine conflicts since the laws covering these issue take into account both the needs of injured plaintiffs and the economic viability of defendants. Thus, Pennsylvania's wrongful death statute, 42 Pa.C.S.A. § 8301, which is more generous that New Jersey's, N.J.S.A. § 2A:31–1 *et seq.* (West 1987), cannot be harmonized on the theory that they both seek to provide compensation for plaintiffs, since these statutes also represent legislative judgments as to

what exposure defendants should bear—defendants who may not be engaged in morally reprehensible conduct and whose economic viability may be important to a state's economy.

It is unrealistic, however, to suggest that the Pennsylvania legislature intended to protect the perpetrators of consumer fraud by holding out the possibility that damage awards might be lower than in New Jersey. Both New Jersey and Pennsylvania wished to protect consumers and their statutes are in harmony in achieving that end. Their differences do not represent competing or conflicting resolutions of a particular policy issue. Rather they both reflect a legislative determination to attack the same evil. Because plaintiff has chosen to invoke the remedies of the New Jersey law, a reasonable interpretation of the statute suggests it was meant to apply to New Jersey sellers, and nothing in the law is in conflict with or repugnant to Pennsylvania law, this court will apply such law in the resolution of this case.

## III. PUNITIVE DAMAGES

■ Plaintiffs assert entitlement to punitive damages under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 *et seq.* (West 1989), which allows punitive damages, as well as treble damages for acts of fraud or misrepresentation "in connection with the sale or advertisement of merchandise ..." N.J.S.A. § 56:8–2 (West 1989). In addition to statutory redress, a New Jersey plaintiff may also maintain a separate cause of action for fraud under the common law. *See* N.J.S.A. § 12A:1–103 (West 1962); see also *D'Angelo v. Miller Yacht Sales*, 261 N.J.Super. 683, 686, 619 A.2d 689, 690 (App.Div. 1993). Plaintiff in this case is not entitled to punitive damages under either application of the law.

### A. *Common Law*

■ At common law, "[f]raud, standing alone, without some additional aggravating element, will not sustain a claim for punitive

---

1. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial

Proceedings of every other State ..." U.S. Const art. IV, § 1.

damages." *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020, 1034 (D.N.J.1995), citing, *Jugan v. Friedman,* 275 N.J.Super. 556, 572, 646 A.2d 1112, 1120 (App.Div.1994), *certif. denied,* 138 N.J. 271, 649 A.2d 1291 (1994). An award of such damages would require a showing of "culpability in excess of that needed to state the bare bones elements of the underlying tort." *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020, 1034 (D.N.J.1995), citing, Keaton, *Prosser and Keaton on Torts* § 2 at 9 (5th ed.1984). This Court has held that "there must be an intentional wrongdoing in the sense of an 'evil-minded act.'" *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224, 1230 (1984). In order for a defendant to be subject to liability for punitive damages, his conduct must be "willful and wantonly reckless or malicious." *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350, 368 (1997), citing, *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224, 1230 (1984).

■ Plaintiffs in the present action have presented absolutely no evidence to support a finding of malicious or wantonly reckless conduct, beyond that alleged in the complaint, to satisfy the elements of fraud and misrepresentation as to the fuel consumption and range of the boat. Plaintiffs have neither established nor alleged any heightened culpability, have offered no evidence of 'evil' intent and are, therefore, not entitled to punitive damages under New Jersey common law.

B. *Statutory Law*

■ Under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 *et seq.* (West 1989), a plaintiff may recover both treble and punitive damages. N.J.S.A. § 56:8–19. However, under the New Jersey Punitive Damages Act, N.J.S.A. § 2A:15–5.9 *et seq.* (West 1987) that plaintiff must prove by clear and convincing evidence "that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15–

5.12. The New Jersey Supreme Court has held that wilfulness and wantonness is satisfied by "a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." *Berg v. Reaction Motors Div., Thiokol Chem. Corp.,* 37 N.J. 396, 414, 181 A.2d 487, 496 (1962).

Once again, plaintiffs have not even alleged, much less advanced, clear and convincing evidence that the defendants' purported acts and omissions were actuated by 'actual malice' or accompanied by 'wanton and willful disregard' of plaintiffs' safety. In the absence of such evidence, punitive damages cannot be granted under the Code. Because punitive damages cannot be maintained under either statutory or common law, plaintiffs' claim for punitive damages is dismissed.

## IV. SUMMARY JUDGMENT

A. *Standard For Summary Judgment*

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

### B. *Products Liability and Negligence*

██ The defendants have moved for summary judgment on counts one and two of the complaint which assert claims for strict liability and negligent misrepresentation. Because the vessel did not cause personal injury or damage to other property, the damages sought by plaintiff are defined as "economic loss" which encompasses cost of repair, replacement of defective goods, and diminution in value of a product that breaches the warranties made when it was sold. *Alloway v. General Marine Industries, L.P.,* 149 N.J. 620, 695 A.2d 264 (1997).

Whether the sale is characterized as a consumer purchase or a commercial transaction, it is now well established in New Jersey that contract remedies embodied in the Uniform Commercial Code are better suited than tort law to resolve claims for economic loss. *Alloway,* 149 N.J. at 627, 695 A.2d at 267. A purchaser who is the victim of fraud or unconscionable conduct will also have substantial rights to recover for common law fraud and for violation of various state and federal statutes such as the New Jersey Consumer Fraud Act or the Magnuson–Moss Warranty Act, 15 U.S.C.A. 2301 *et seq. See Alloway,* 149 N.J. at 639–40, 695 A.2d at 273–74.

The United States Supreme Court recognized that "the public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty" ran the risk that "if this development were allowed to progress too far, contract law would drown in a sea of tort." *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

Just three months before the *East River* decision, the economic loss doctrine barring tort remedies was first adopted in New Jersey for commercial (but not consumer) transactions in *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 561, 489 A.2d 660, 663 (1985) (holding that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence"). In *Spring Motors,* the Court found that the U.C.C. "provides the more appropriate system for adjudicating disputes arising from frustrated economic expectations." *Id.* at 580, 489 A.2d at 673. Plaintiffs claim that negligent misrepresentation is an exception to this rule is unavailing. *See also Sea–Land Service, Inc. v. General Electric Co.,* 134 F.3d 149, 155 (3d Cir.1998) ("the harm that Sea–Land seeks to recover –economic loss– is the exact type of injury that ... should be the subject of a contract based warranty suit, not a tort suit"); *Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450 (D.N.J.1998); *Hoke, Inc. v. Cullinet Software, Inc.,* 1992 WL 102715, *2 (D.N.J. Mar.18, 1992) ("[T]he court is convinced that under New Jersey law, the *Spring Motors* holding would extend to bar tort suits for negligent misrepresentations inducing the formation of contracts between commercial parties."); *Henry Heide, Inc. v. WRH Products Co., Inc.,* 766 F.2d 105, 109 (3d Cir.1985) (dismissing claim of negligent misrepresentation, noting that "[b]ecause this claim arises out of a sales transaction between commercial entities, it should be analyzed within the framework of the U.C.C. rather than by the rules of nonintentional tort law."); *Unifoil Corp. v. Cheque Printers And Encoders Ltd.,*

622 F.Supp. 268, 271 (D.N.J.1985)(dismissing claim of negligent misrepresentation).

*Spring Motors* also made clear that the cause of action under the U.C.C. extended not only to the immediate seller, but to remote suppliers and component manufacturers. In that case one of the defendants was Clark Equipment Company which manufactured the transmission alleged to be defective. The court found that the U.C.C.'s drafters intended "to recognize a claim under the U.C.C. for economic loss in a breach of warranty action without regard to vertical privity." *Spring Motors,* 98 N.J. at 586, 489 A.2d at 676. Thus, the economic loss doctrine was applied not only to a suit against the purchaser's immediate seller, but to actions against remote suppliers.

More recently *Alloway* extended the economic loss doctrine to transactions which could be characterized as consumer sales, overruling an arguably conflicting decision in *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). The Court quoted Chief Justice Veasey of the Delaware Supreme Court who "reasoned that to allow an exception for individual consumers would defeat the legislative intent in enacting the U.C.C. 'as the complete framework of the rights and remedies available to the parties to a sale of goods contract.'" *Alloway,* 149 N.J. at 637, 695 A.2d at 272. Interestingly, *Alloway* also involved the purchaser of a boat, a thirty-three foot Century Grande XL, which had the misfortune of sinking while still moored at the dock.

In accordance with the economic loss doctrine the Court grants summary judgment with respect to counts one and two.[2]

## C. *Implied and Express Warranties*

The defendants move for summary judgment on counts three, four and five of the complaint which alleges breaches of implied and express warranties. For the reasons set forth below, this Court declines to grant summary judgement on these issues as the defendants have failed to carry the necessary burden to support such a motion.

### 1. *Implied Warranty of Fitness*

The defendants have moved for summary judgment on the plaintiffs breach of the implied warranty of fitness for a· particular purpose claim. The defendants contend that the plaintiffs are incapable as a matter of law of proving a breach of this claim. The defendants claim that Greenwich was the only party advised of the particular purpose for which the plaintiffs required the vessel and that this notice cannot be imputed to the other defendants. The defendants also maintain that Greenwich is not liable for the breach because it was not notified within a "reasonable time" as required by § 2–607(3)(a) of the Uniform Commercial Code. N.J.S.A. § 12A:2–607(a)(3) (West 1962).

The plaintiffs respond that since the advice given by Greenwich was based on advice they received from the other defendants the other defendants are also liable for the breach of this implied warranty. They also deny that Greenwich was not given notice since they assert that they did complain to Greenwich upon receipt of the boat and satisfied the reasonable time requirement by making the other defendants aware of the breach. Since this Court finds that there are disputed facts which bear on these issues, this motion will be denied.

▇ In New Jersey, "[w]here a tender has been accepted, the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of a breach or be barred from any remedy." N.J.S.A. § 12A:2–607(3)(a). Under the U.C.C., "[w]hat is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." *See* N.J.S.A. § 12A:1–204(2) (West 1962). This notice restriction "is designed to defeat commercial bad faith, not to deprive a good faith

---

**2.** *Alloway did not resolve the issue of whether tort or contract law would apply to a product which threatens, but does not actually cause, personal injury or harm to other property. Id. at 638, 695 A.2d at 273. Nothing in this record suggests that the Albermarle boat posed such a* risk and, in any case, the trend of recent authority in New Jersey would suggest that contract principles are still exclusively appropriate where there is no actual personal injury or property damage, whether or not the non-conformity of the property threatened such harm.

consumer of his remedy." *See* N.J.S.A. § 12A:1–204 cmt. 4. Courts have interpreted this section as implying a requirement that the defendant be prejudiced by the lack of notice. *See Cipollone v. Liggett Group, Inc.*, 683 F.Supp. 1487, 1498 n. 14 (D.N.J.1988) ("the court notes that whether defendant was prejudiced by the lack of notice is also a relevant consideration"); *see also Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 298 (3d Cir.1961)(One of the factors to be considered is, whether the delay in giving notice or its form prejudiced the seller). While the plaintiffs claim that all of the defendants were aware of the problems, even if the plaintiffs failed to complain with a "reasonable time," the defendants have not alleged any prejudice from such delay. For this reason the claim that Greenwich is not liable is denied.

■ The defendants second claim is also lacks merit. The defendants maintain that outside of Greenwich, the other defendants were not made aware of the particular purpose for which the plaintiffs intended to use the vessel. They allege that absent this knowledge, they are not liable for a breach of the implied warranty of fitness for a particular purpose. However, the plaintiffs maintain that the information used by Greenwich in creating the belief that the vessel would serve the purposes necessary for plaintiffs came directly from information relayed from the other defendants. In cases such as this it is possible that the other defendants will also be responsible for a breach of this implied warranty. *See Duall Building Restoration, Inc., v. 1143 East Jersey Avenue Assoc.*, 279 N.J.Super. 346, 363, 652 A.2d 1225, 1233 (App.Div.1995) (citing *Dobias v. Western Farmers Ass'n*, 6 Wash.App. 194, 491 P.2d 1346 (1971) for the proposition that when the retailer passed on advice from the manufacturer both were liable for a breach of the implied warranty of fitness). In this case the plaintiffs maintain that the information they received from Greenwich was passed on by the other defendants and this fact may entitle them to a claim against all of the

defendants. Accordingly, the motion for summary judgment for this claim is denied.

### 2. *Implied Warranty of Merchantability and Express Warranties.*

The defendants claim again that the plaintiffs are barred from pursuing remedies for the implied warranty of merchantability and any express warranties because they failed to give notice to Greenwich of any breach. This argument is rejected for the reasons discussed in the previous section.

## V. MOTION TO EXCLUDE TESTIMONY

■ Plaintiffs seek to introduce a report prepared by their expert, McCook, in order to prove the amount of damages necessary to fulfill their expectations. The report analyzes the value of a hypothetical boat[3] capable of performing as the boat that the defendants allegedly warranted would perform. This hypothetical value, & 275,000, is $100,000 more than the purchase price, and plaintiff seeks to include this amount in his damage calculations. In short, plaintiff argues that he was entitled to receive a $275,000 boat for a $175,000 purchase price.

Defendants seek to exclude McCook's report, arguing that plaintiffs' proposed evidence of damages should be excluded as irrelevant under Fed.R.Evid. 402. Defendants contend that the opinion is irrelevant because it states damages outside of those within this Court's previously announced measure of damages in this case. In excluding the report of the first expert, this Court stated: "plaintiffs are not entitled to damages above and beyond the decreased value of the boat, the costs incurred in an attempt to repair the boat and the fuel costs and other reasonably foreseeable and nonspeculative, incidental costs incurred prior to their decision to cease using the boat." *See* Court's First *In Limine* opinion.

Under New Jersey law one measure of damage for a seller's breach of contract for the sale of goods is the difference between the fair market value of the goods as war-

---

3. Mr. McCook admits in the report that he could not find any boats of equal size which perform as allegedly promised to Mr. Boyes. *See* Affidavit of William A. Carpenter Jr. Supporting Motion *in limine* to exclude opinion Evidence of Michael J. McCook, exh. E.

ranted and the actual value of the non-conforming goods. *See* N.J.S.A. § 12A:2–714(2) (West 1962). In the usual case the purchase price and the fair market value of conforming goods are the same or reasonably close. However, on occasions the plaintiff argues that the fair market value of the goods as warranted would have been far in excess of the purchase price. This may be because the plaintiff negotiated a very favorable deal, the seller misperceived the value of what was being promised or the market value of the goods changed during the period between contract and delivery. This latter phenomenon is most likely to occur for commodities in which there is an established, but fluctuating, market.

In *Chatlos Systems, Inc. v. Nat. Cash Register Corp.*, 670 F.2d 1304 (3d Cir.1982) the plaintiff purchased a computer system for $46,020 which failed to operate properly. At the trial plaintiff offered expert testimony that the "value of a computer system that would perform all of the functions that the NCR 399/656 has been warranted to perform" was $207,826.50. *Id.* at 1308. Based on a $6,000 value of the computer system as delivered, the third circuit upheld a damage award of $201,826.50, almost five times the original purchase price.

Judge Rosenn dissented based, at least in part, on a distinction between the remedy of cover provided in N.J.S.A. § 12A:2–712 and the measure of damages provided in 2–714(2). On a petition for en banc rehearing three other judges suggested that there was some merit to Judge Rosenn's dissent. New Jersey has recognized that where a damage claim becomes too speculative it will not be allowed. *See McGuire v. City of Jersey City*, 125 N.J. 310, 324, 593 A.2d 309, 316 (1991). In a fraud context courts have also limited traditional measures of damages which, if applied, would result in a perceived windfall to the plaintiff. *See Correa v. Maggiore*, 196 N.J.Super. 273, 482 A.2d 192 (App.Div.1984); *Marcangelo v. Boardwalk Regency Corp.*, 847 F.Supp. 1222, 1231(D.N.J.1994), *appeal dismissed*, 47 F.3d 88 (1995).

This court has some doubt that the New Jersey Supreme Court would permit the result reached in *Chatlos*, either for the reasons put forth by Judge Rosenn in his dissent or on the basis that the damages sought were too speculative or an unwarranted windfall. *See Correa*; N.J.S.A. § 12A:1–103 (West 1962). However, judgments as to whether the damages claims are speculative or constitute a windfall require a subtle appreciation of the facts best obtained by the trier of fact after a full hearing. For this reason defendants' motion to exclude the report is denied.

## VI. LIMITATION OR WARRANTIES OR REMEDY

Defendants have also argued at various times that one or more of them have successfully limited their warranties under N.J.S.A. § 12A:2–316 (West 1962) or the available remedies under 2–719. In its present posture there are simply too many factual disputes or subtleties to permit a summary judgment or to make the determinations suggested by 2–316(1)(" . . . negation or limitation is inoperative to the extent that such construction is unreasonable") or 2–719(2)("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.").

## VII. CONCLUSION

Defendants' choice of law motion will be denied and the court will apply the New Jersey law including its Consumer Fraud Act. Summary judgement on plaintiffs' strict liability and negligence claims in counts one and two will be granted in favor of the defendants. Summary judgment on plaintiffs' warranty claims under the UCC will be denied. Defendants' *in limine* motion to exclude the expert report of the plaintiffs will be denied.