# Richmond

## Francis M. Hoge, Administrator, Etc. v. Henry A. Anderson.

December 1, 1958.

Record No. 4832.

Present, All the Justices.

The opinion states the case.

*Francis H. Hoge* and *Ralph R. Repass*, for the plaintiff in error.

*Ralph L. Lincoln*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Henry A. Anderson, a passenger in an automobile operated by Edgar Roy Moss, was injured when the car in which he was riding collided with a vehicle driven by David Ransom Moore. Anderson instituted action against Moore, who died before trial, and the action was revived against Francis M. Hoge, Administrator of the Estate of David Ransom Moore. A jury verdict was returned for $20,075, upon which the court entered judgment.

The parties will be referred to at times as plaintiff and defendant in accordance with the positions they occupied in the court below.

The accident occurred on August 19, 1956 at 11:55 A. M. on State Highway No. 636 between Saltville and Chilhowie in Smyth County. The road runs in a northerly and southerly direction, is black top and has many curves. In the immediate vicinity of the point of collision the paved surface of the highway is 16 feet wide. On the east side of it is a practically level shoulder 6 feet wide which extends to a fence. On the west side is a shoulder 1 foot wide, bordering a ditch about 1 foot wide and 1 foot in depth, beyond which is a bank extending sharply up to a fence approximately 10 feet from the western edge of the black top. The road was wet and it was "drizzling" rain when the cars collided.

Moss was driving a 1950 Chevrolet four door sedan, proceeding south toward Chilhowie. In it there were three other persons. Plaintiff was seated on the left side of the rear seat. Moore was operating a 1951 Ford four door sedan proceeding north toward Saltville. There were no other occupants in his vehicle. The impact occurred in a short straight section of the highway approximately 50 yards south of a curve Moss had rounded and about 25 to 30 yards north of a curve Moore had passed. There is a small house on the

bank on the west side of the road, and at the time there was a 1950 Studebaker sedan, owned by F. W. Aistrop, parked opposite the house on the east side headed south with its right wheels on the hard-surfaced portion of the highway approximately 1 foot.

According to Moss his speed was 25 miles per hour when he first saw Moore approaching at a distance of about 25 to 30 yards in the southbound (Moss') lane at 35 miles per hour. Moss applied his brakes, veered his car to the right, traveled with his right front wheel in the ditch from 20 to 30 feet, attempted to cut further to the right into the bank and was almost at a stop when Moore's car, which continued to travel in Moss' lane, struck the left rear of the Moss vehicle at a point in the highway about 15 feet north of the parked Aistrop car.

Plaintiff received head injuries which rendered him unconscious and was taken to a hospital. Moore likewise sustained head injuries and he was hospitalized. Moore died on March 27, 1957 from causes not related to this accident.

■ Defendant assigns as error the action of the court in permitting Lloyd Currin, Clerk of the Circuit Court of Smyth County, to calculate and testify as to the gross earnings and the average weekly earnings of plaintiff from pay slips then in evidence.

Currin testified, over the objection of defendant, as to the total of all of plaintiff's pay slips. He then gave the total of all the pay slips for a full week's work and computed the average weekly amount to be $79.98. Based on that weekly average he computed the amount for the 36 week period from August 19, 1956, the date of the accident, to April 23, 1957. He also gave his computation for the following 36 week period.

Defendant contends that the jury could and properly should have made its own calculations from the pay slips.

On the other hand plaintiff argues there was nothing in Currin's evidence to prevent the jury from making its own calculations and it cannot be said that they did not. He further contends that he could have made the calculations for the jury had his learning and mental capacity permitted and that much time was saved by calling Currin who was in possession of computing machines.

The court said: "I think it is a matter of arithmetic. * * * The jury can calculate it just as well as the clerk, but in order to expedite matters, let him go forward."

We find no reversible error was committed in permitting Currin

to make and testify concerning the calculations.

■ Defendant also assigns as error the action of the court in refusing to permit defendant to cross-examine plaintiff with respect to payroll deductions, living and traveling expenses or to cross-examine Currin on payroll deductions as shown by the pay slips in evidence, all for the purpose of determining plaintiff's net income, and in limiting all testimony to evidence of plaintiff's gross earnings.

Defendant argues that gross earnings of plaintiff are not a true measure of damages; that income taxes are payable upon gross earnings and not payable upon an award in the case at bar; that since the pay slips were in evidence for the jury's consideration he should have been permitted to cross-examine plaintiff and Currin on all payroll deductions listed thereon which included income taxes, social security, advances, check-off's etc, and to inquire into plaintiff's net earnings and ascertain his living and traveling expenses while working in Baltimore, Maryland for the purpose of showing that his earning capacity while there was about the same as when he worked on the farm at Saltville and lived at home. The record shows that defendant was permitted to cross-examine plaintiff as to "check-off". Defendant cites no authority in support of his contention.

In *Hall* v. *C. & N. W. Ry. Co.*, 5 Ill. 2d 135, 149, 150, 125 N. E. 2d 77 at page 85, it is said:

"In considering this question it must be borne in mind that the trial judge during the course of the trial ruled that on the issue of earning capacity evidence of gross earnings before taxes was proper. This ruling appears to be in accord with the weight of authority. See, for example, 9 A. L. R. 2d 320, where the annotator states, at page 321: 'Where the question has arisen, in reported cases, the courts generally have been of the opinion that in fixing damages for impairment of earning capacity the fact that the damage award will be exempt from income tax, whereas if the awardee had not sustained the loss of earning capacity and had gone to work and received the income forming the basis of such damage award, he would have become subject to income tax liability on such earnings, is not a matter to be taken into consideration and is no ground for diminishing the amount of damages for impairment of earning capacity.' To the same effect is a case involving the same defendant, *Chicago and Northwestern Railway Company* v. *Curl*, 178 Fed. 2d 497, where the court said at page 502: 'Appellant's assignment of

error in the court's refusal to receive evidence offered by appellant raises the question whether the present value of appellee's probable future earnings was to be computed upon his average gross income as a railroad fireman, or upon his average income in that capacity after deductions for income tax, railroad retirement, and other miscellaneous deductions. The actuary who testified for appellee based his computations on appellee's gross income for several years prior to the action, and the court refused to receive appellant's offer of proof of appellee's average net earnings after deductions. Appellant offers no authority in support of this contention. But see and compare *Stokes* v. *United States*, 2 Cir., 144 Fed. 2d 82, 87; *Cole* v. *Chicago, St. P., M. & O. Ry Co.* D. C., 59 Fed. Supp. 443, 445; *Majestic* v. *Louisville and Nashville Railway Co.* 6 Cir., 147 Fed. 2d 621, 626-627. We conclude that there was no prejudicial error in the court's refusal to accept appellant's offer of proof.' "

In 15 Am. Jur., Damages, § 90, p. 500 the principle is thus stated:

"The measure of damages for loss of time is the value of the plaintiff's time while prevented from working by reason of the fault or negligence of the defendant, the true test being what his services might be worth to him in his ordinary employment or business. The plaintiff must establish a reasonable probability that his injury did bring about a loss of earnings, must afford a basis for a reasonable estimate of the amount of that loss, and to this end must prove both the amount of time lost and its value. He may show what he was making at the time of, or before, the injury."

The trial court ruled properly in limiting the testimony to evidence of plaintiff's gross earnings and in refusing to permit defendant to cross-examine witnesses on payroll deductions, living and traveling expenses for the purpose of showing plaintiff's net income. In assessing damages for loss of wages consequent upon personal injuries, the basis of such award is what he was making at the time of, or before, the injury. In determining what he was making it is the gross pay and not the net or "take home pay" that controls, and proof of deductions are not pertinent for the purpose of reducing the amount of damages for impairment of earning capacity.

■ On August 24, 1956, five days after the accident and while he was a patient in the hospital, Moore gave a written signed statement in which he related his version of the accident. To whom and

for what purpose the statement was given is not disclosed by the record.

Defendant's principal assignment of error is to the action of the court in excluding the signed statement of defendant's decedent, Moore, after plaintiff, the adverse party, had testified.

Plaintiff testified as to his injuries and earnings, but did not testify as to the circumstances surrounding the accident, as he was rendered unconscious as a result of the accident and did not remember events prior to, during or after the collision.

Defendant attempted to introduce the statement under § 8-286, Code 1950, through Mary H. Moore, widow of defendant's decedent, who identified decedent's signature to the writing, but the court sustained plaintiff's objection to its admission. Section 8-286 reads as follows:

"In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

It is the contention of defendant that since plaintiff, an adverse party, testified, the satement of Moore who by reason of his death is incapable of testifying is admissible in evidence. Plaintiff maintains that since he did not testify as to any fact concerning the accident or events prior thereto or surroundings thereafter, § 8-286 is not applicable and the exclusion of the statement was proper.

The revisors of the Code of 1919 made material changes in the law governing the competency of witnesses to testify. They removed practically all disqualifications except to safeguard confidential communications, particularly between husband and wife. It was deemed necessary in order to meet difficulties that might result from the removal of disqualifications to add a new section designated 6209, which is § 8-286, Code 1950. The revisors deemed this section, coupled with the safeguard of cross-examination, to be sufficient protection for estates of persons under disability or who are incapable of testifying. *Robertson's Ex'r v. A. C. R. Co.*, 129 Va. 494, 499,

500, 106 S. E. 521; Section 6209, Code 1919, Revisors' note; 5 Va. Law Reg. (N. S.) 125, 126.

Plaintiff argues that the phrase in the statute "if such adverse party testifies" means testifies as to the issue involved, and that in the case at bar he only testified as to his injuries and wages and gave no testimony relating to the facts surrounding the accident. To place such an interpretation upon the statute would be adding something to it. If the General Assembly had intended such a construction of the statute as plaintiff urges, it could have easily accomplished that purpose by adding appropriate language.

In *Enright* v. *Bannister*, 195 Va. 76, 82, 77 S. E. 2d 377, in adverting to the purpose and scope of the statute we said: "* * * It was properly conceded in argument that this affidavit was admissible in evidence, and that the other statements by Mrs. Landers above alluded to were likewise admissible under section 8-286 of the Code, the appellees, adverse parties, having testified."

Our conclusion is that when an adverse party testifies concerning any phase of his case, then "all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence". In order to accomplish the manifest purpose of the General Assembly, we construe the word "may" as used in this statute to be mandatory and not permissive. *C. & O. Ry. Co.* v. *Pulliam*, 185 Va. 908, 916, 41 S. E. 2d 54.

The memorandum or statement in question is relevant to the matter in issue and was made by Moore while he was capable. He was incapable of testifying at the trial by reason of his death. Under these circumstances, plaintiff having testified, the statement was admissible under § 8-286, and the court's action in refusing to admit it in evidence constituted reversible error.

Other errors assigned include the action of the court in granting instruction IIIA, and in refusing to grant instructions A, D and E.

Instruction IIIA is couched in the following language:

"The Court instructs the jury that the law of the road is that the driver of an automobile, upon a highway of sufficient width, in the exercise of reasonable care shall drive upon his right-hand side of said road, and if you believe from a preponderance of the evidence that D. R. Moore failed to observe this rule, then his failure would constitute negligence."

This instruction was apparently based on § 46-220, Code 1950. That being true, it is pertinent to observe that it is not negligence under the terms of the statute for an operator of a vehicle to drive to the left of the center of the highway under the circumstances and conditions permitted in the statute. The objections to this instruction were not as definite and specific as they should have been, yet as the judgment is to be reversed on another ground it is advisable to state that should a new trial be had and the evidence justifies such an instruction, it should be qualified in keeping with the terms of the statute.

Instruction A embodies the doctrine of sudden emergency. Instruction D sets forth the unavoidable accident theory. Instruction E provides that if the jury believe that the accident and injuries to plaintiff were proximately caused by the negligence of Moss or Aistrop, or by their combined negligence, and that the negligence of either or both was the sole proximate cause of the accident and injuries to plaintiff, then a verdict should be returned for defendant. Under the evidence admitted the court did not err by refusing these instructions.

For the reasons stated the judgment appealed from is reversed, the verdict of the jury is set aside and the case is remanded for a new trial.

*Reversed and remanded.*