## Richmond

MARY SUE SAGER v. WINFRED WILLIAM ORTTS.

November 26, 1973.

Record No. 8223.

Present, All the Justices.

J. Sloan Kuykendall (David J. André; Kuykendall, Hall & Whiting, on brief), for plaintiff in error.

Robert T. Mitchell, Jr.; Thomas V. Monahan (Albert T. Mitchell; Hall, Monahan, Engle, Mahan & Mitchell; Mitchell & Arthur, on brief), for defendant in error.

Per Curiam.

On October 11, 1969, shortly after noon, a motorcycle operated by Winfred William Ortts collided with a red Volkswagen automobile operated by Mary Sue Sager (now Schindle) in the Town of Woodstock. Ortts brought this action against Sager to recover damages for personal injuries received in the collision. A trial by jury resulted in a verdict for Ortts in the sum of $30,000. We granted Sager a writ of error to the judgment entered on the verdict.

The collision occurred in the intersection of Main Street (U.S. Route 11), which runs north and south, and Foundry Street, which runs east and west. At the time of the accident there were no traffic signals or signs at the intersection. Ortts was proceeding south on Main Street, which is 40 feet wide and has a speed limit of 35 miles per hour. Sager was driving east on Foundry Street, which is almost 23 feet wide. It was a clear day and the streets were dry.

The plaintiff, Ortts, testified that he was traveling at a speed of 25 to 30 miles per hour in a line of southbound traffic and was maintaining a distance of 50 to 75 feet from the automobile preceding him. He first saw the Sager Volkswagen stopped on Foundry Street at the intersection with Main Street when the automobile in front of him was approximately even with the Volkswagen. By this time Ortts was 25 to 40 feet from the intersection. He assumed that Sager was waiting also for him to pass. As he came within 15 to 20 feet of the intersection, Sager pulled out into Main Street. Although Ortts applied his brakes, he was unable to stop and ran into the left front door of the Sager car.

The defendant, Miss Sager, testified that she drove from her home, one block away, east along Foundry Street and stopped at the Main Street intersection to let traffic from both directions on Main Street pass by. She first saw the motorcycle when it was one block north of Foundry. More than one southbound car and "a few" northbound vehicles passed her while she was stopped at the intersection. After the southbound cars passed, she looked in both directions and then pulled into Main Street, intending to make a left turn and to proceed north to a shopping center. She thought she had plenty of time to get into the northbound lane safely, but Ortts ran into her car while she was still crossing the southbound lane, one of the wheels of her car being across the center line of Main Street.

It is clear from the record that Ortts and Sager, who were familiar with the streets of Woodstock, recognized that Main Street is a through highway. Indeed, Sager testified that she customarily stopped on Foundry at Main because of cars on the "main highway", and did so on this occasion.

The first question presented to us is whether the intersection statute, Code § 46.1-221[1] applies. If it does, then Sager, relying on

---

[1] Code § 46.1-221 provides in pertinent part:

"[W]hen two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. . . . The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder."

*Bolinaga* v. *Savage*, 206 Va. 336, 143 S.E.2d 839 (1965), says that Ortts as a matter of law was guilty of contributory negligence barring his recovery. In that case plaintiff knew that defendant, approaching from plaintiff's right, had the right of way but assumed, when defendant stopped at the intersection, that she would remain stopped until plaintiff passed. We held that defendant did not forfeit the right of way by stopping and that plaintiff was guilty as a matter of law of contributory negligence that proximately caused or contributed to cause the collision.

Sager also relies on *King* v. *Eccles*, 209 Va. 726, 167 S.E.2d 349 (1969), where we held that, in the absence of such an exception in the intersection statute, the driver of a vehicle on a more important street is not entitled to precedence over one approaching an unmarked intersection from the right on a less important street. Defendant was the privileged driver and we held that whether he was negligent, and if so, whether his negligence proximately caused the accident, were jury questions, but that he was entitled to have the jury instructed that plaintiff had the statutory duty to yield the right of way to him, that plaintiff had failed to do so and that plaintiff was therefore negligent. *See* Note 55 Va. L. Rev. 1395, at 1419.

*Bolinaga* and *Eccles* involved situations where only one car was proceeding on each of the intersecting streets. In this case, Ortts was driving in a line of traffic and was following vehicles which were proceeding through the intersection when Sager reached Main Street and brought her vehicle to a stop. Obviously, Sager had no right of way over that part of the line which was already in the intersection, and logic would dictate that any right of way she might otherwise have had over vehicles approaching from her left would not become operative until the entire line of traffic had passed. So the right of way statute is not applicable to the situation in this case.

The trial court granted, at Sager's request, instructions based upon the right of way statute, but, over Sager's objections, modified the instructions to apply a reasonably prudent man test to Ortts[2]. Sager

---

[2] For example, Instruction No. 12 provided as follows:

"The Court instructs the jury that the defendant, Mary Sager, occupied a position to the right of plaintiff and, therefore, Mary Sager had the right of way into the intersection. Mary Sager did not forfeit the right of way by bringing her vehicle to a complete stop before entering the intersection, and plaintiff had the duty to anticipate that the Sager vehicle might be driven into the intersection in the exercise of defendant's right of way, *unless under the circumstances a reasonably prudent person would have assumed that the defendant did not intend to enter the intersection until after the plaintiff had passed.*" (Words in italics are additions of the Court.)

now argues that the court erred in so modifying the right of way instructions. But since she was not entitled to the instructions in the first place, her case went to the jury in a far better light than she was entitled to have it presented. So she cannot complain of the alleged error of the trial court.

There was ample evidence from which the jury could find that Sager suddenly drove into the path of Ortts and was guilty of negligence which proximately caused the accident. Ortts's version of the accident received support from the testimony of the investigating police officer, who stated that Sager told him immediately after the accident that when she pulled out she did not see the motorcycle.

■ There was also sufficient evidence to justify the damage instruction which included past and future loss of income as elements of damage to be considered by the jury. Ortts testified to his hourly wages at his previous job and to the wages that he was required to pay the man whom he employed to do his work while he was incapacitated. *See Hoge, Adm'r* v. *Anderson,* 200 Va. 364, 368, 106 S.E.2d 121, 124 (1958).

As we conclude that there was no reversible error in the rulings of the trial court to which errors have been assigned, the judgment order will be affirmed.

*Affirmed.*