**BRANTLEY SLATER, Plaintiff,**

v.

**SKYHAWK TRANSPORTATION, INC., Mark Young, S.D. Warren Paper Company, XYZ Corporation, ABC Partnership, Mary Doe, And John Doe, Defendants,**

and

**Skyhawk Transportation, Inc., and Mark Young, Third–Party Plaintiffs,**

v.

**S.D. Warren Paper Company and Reco Constructors, Inc., Third–Party Defendants.**

No. CIV.A.97–1853.

United States District Court, D. New Jersey.

Dec. 10, 1999.

Gerald M. Eisenstat, Eisenstat, Gabage, Berman & Furman, P.C., Vineland, NJ, for Plaintiff, Brantley Slater.

Richard W. Yost, John M. Campbell, Yost & Tretta, Haddonfield, NJ,Bennnet I. Bardfeld, Vineland, NJ, for Defendants, Skyhawk Transportation, Inc., and Mark Young.

Joseph M. Assan, Law Offices of Thomas Dempster III, Mt. Laurel, NJ, for Defendant and Third–Party Defendant, S.D. Warren Paper Company.

James Francis Supple, Fitzpatrick, Reilly, Supple & Gaul, New Providence, NJ, for Third–Party Defendant, Reco Constructors, Inc.

## OPINION

ORLOFSKY, District Judge.

Once again, this Court must plumb the murky depths of New Jersey's conflicts-of-law rules to determine whether the law of New Jersey, Michigan, or Virginia should govern the issue of damages in this case.[1] Plaintiff, Brantley Slater ("Slater"), was injured when he was struck by a tractor trailer owned by Skyhawk Transportation, Inc. ("Skyhawk"), and operated by Mark Young ("Young"), both Defendants in this matter. Slater was an employee of Reco Constructors, Inc. ("Reco"), a Virginia corporation. *See* Cert. of Richard W. Yost, Esq., ¶ 4 (filed Mar. 8, 1999); Cert. of James F. Supple, Esq., ¶ 4 (filed Mar. 8, 1999). In May, 1995, Reco was hired by S.D. Warren Paper Company ("S.D.Warren"), a paper manufacturer, to repair equipment located at S.D. Warren's Muskegon, Michigan, plant. *See* Cert. of Richard W. Yost, Esq., ¶¶ 3, 8; Cert. of James F. Supple, Esq., ¶¶ 5–6. Slater was a member of the Reco construction crew dispatched to Muskegon to perform the contracted-for repairs. *See* Cert. of Richard W. Yost, Esq., ¶¶ 5, 8; Cert. of James F. Supple, Esq., ¶ 28. In order to complete its work at S.D. Warren's plant, Reco ordered materials from American Galvanizing, Inc. ("American"). *See* Cert. of James F. Supple, Esq., ¶ 8. American, in turn, hired Skyhawk, a New Jersey corporation, to transport the materials purchased by Reco to S.D. Warren's facility. *See* Cert. of Richard W. Yost, Esq., ¶¶ 5, 8; Cert. of James F. Supple, Esq., ¶ 9. Young, a Skyhawk employee, drove the Skyhawk truck that carried Reco's supplies. *See* Cert. of Richard W. Yost, Esq., ¶ 5; Cert. of James F. Supple, Esq., ¶ 22. Slater was allegedly injured when Young, having arrived at the S.D. Warren plant, attempted to back his Skyhawk tractor trailer into position for the materials to be unloaded and allegedly struck Slater. *See* Cert. of Richard W. Yost, Esq., ¶ 5; Cert. of James F. Supple, Esq., ¶ 28.[2]

On April 2, 1997, Slater filed a Complaint alleging negligence, recklessness, and outrageous conduct on the parts of Skyhawk and Young. *See* Compl. at 3 (filed Apr. 2, 1997). Skyhawk and Young subsequently filed a Third–Party Complaint against S.D. Warren and Reco, claiming in part that the negligence of Reco employees in directing Young and the Skyhawk truck into position caused Slater's alleged injuries. *See* Third–Party Compl. at 1–2 (filed Oct. 27, 1997). In the alternative, Skyhawk and Young sought contribution or indemnification from Reco. *See id.* at 3. I dismissed Skyhawk and Young's Complaint against Reco insofar as it asserted that Reco was solely liable for Slater's injuries, holding that Skyhawk and Young could obtain recovery from Reco only if Skyhawk and Young were first held liable for Slater's alleged injuries. *See Slater v. Skyhawk Transportation, Inc.,* 187 F.R.D. 185, 203 (D.N.J.1999) (Orlofsky, J.).

Soon after the Third–Party Complaint was filed against S.D. Warren and Reco, S.D. Warren filed a cross-claim against Reco seeking contribution or indemnification. *See* Answer of S.D. Warren at 4–5 (filed Jan. 15, 1998). S.D. Warren was later made a Defendant in this case when Slater amended his complaint to allege negligence, recklessness, and outrageous conduct by S.D. Warren for failing to keep its premises suitably safe. *See* Am. Compl. at 6–7 (filed Aug. 14, 1998). I later

---

1. In an earlier opinion filed in this case, I held that no conflict existed among the laws of New Jersey, Michigan, and Virginia concerning the statute of limitations for personal injury actions, the standard of care applicable to negligence claims, and the rights of co-employees to sue each other under workers' compensation statutes. *See Slater v. Skyhawk Transportation, Inc.,* 187 F.R.D. 185, 193 (D.N.J.1999) (Orlofsky, J.). Consequently, I applied the laws of all three states in making rulings regarding those issues. *See id.*

2. An extended discussion of the factual circumstances surrounding this accident appears in one of my previous opinions in this case. *See Slater,* 187 F.R.D. at 190–91.

granted S.D. Warren's motion to dismiss Slater's claims against it, ruling that they were time-barred by the applicable statutes of limitations. *See Slater,* 187 F.R.D. at 199.

Two motions are currently before this Court. First, Reco moves for summary judgment on the ground that the workers' compensation statutes applicable in this case bar recovery by Skyhawk and Young against Reco.[3] *See* Mem. Supp. Reco Mot. Summ. J. at 6 (filed Mar. 8, 1999). Second, Skyhawk and Young have filed a motion asking this Court to make a determination that New Jersey law governs the issue of damages in this case. *See* Mot. for Determination of Choice of Law at 3 (filed Mar. 18, 1999).

For the reasons set forth below, I find that Skyhawk and Young are barred by the applicable workers' compensation laws from recovering damages from Reco. Moreover, I conclude that New Jersey has a greater interest than either Virginia or Michigan in having its law of damages applied in this case. Under the governmental interest analysis I am required to apply under New Jersey's choice-of-law rules, I hold that New Jersey law governs the issue of damages in this case. Accordingly, I shall grant Reco's motion for summary judgment and Skyhawk and Young's motion to apply New Jersey's law of damages.

## I. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

"On a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P. 56(c)). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In opposing summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to material facts,"*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence. *Abraham,* 183 F.3d at 287. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Abraham,* 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham,* 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir.1998)). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts

---

**3.** Reco made this argument earlier in this case. In my May 4, 1999, opinion I denied a motion by Reco for summary judgment in which Reco asserted that S.D. Warren could not be held liable to Skyhawk and Young for Slater's injuries. *See Slater,* 187 F.R.D. at 210. Reco filed a motion for reconsideration in which Reco argued that it could not be found liable to either Skyhawk or Young because Reco was Slater's employer and recovery of the type Skyhawk and Young sought was barred by the relevant workers' compensation statutes. *See* Order at 3 (dated Aug. 11, 1999). I denied the motion partly on the ground that Reco's contention had not been raised in Reco's original summary judgment motion. *See id.*

set forth by the moving party with appropriate record support." *Anchorage Associates. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir.1989)). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed. R.Civ.P. 56(e); *see Anchorage Assocs.*, 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movants only if they are entitled to a judgment as a matter of law. *See Anchorage Associates*, 922 F.2d at 175.

## II. DISCUSSION

### A. *Reco's Motion for Summary Judgment*

Reco argues that, as a matter of law, Skyhawk and Young cannot obtain either contribution or indemnification from Reco. *See* Mem. Supp. Reco Mot. Summ. J. at 6. Specifically, Reco contends that the workers' compensation statutes applicable in this case provide the exclusive means by which liability may be imposed on employers for the job-related injuries of their employees. *See* Letter Br. (dated Mar. 5, 1999). Reco contends that these statutes therefore bar third parties like Skyhawk and Young from seeking contribution from employers like Reco. *See* Mem. Supp. Reco Mot. Summ. J. at 6. Reco further argues that third parties may seek indemnification from employers only when the employer has expressly agreed to indemnify the third party. *See id.* Because Reco did not expressly agree to indemnify Skyhawk and Young in this case, Reco maintains that it cannot be made to indemnify Skyhawk or Young. *See id.* Consequently, Reco believes it should be granted summary judgment on the Third–Party claims that have been filed against it by Skyhawk and Young. *See id.*

Skyhawk and Young counter by saying remarkably little about the merits of their claims against Reco. Rather, Skyhawk and Young assert repeatedly that S.D. Warren's Cross–Claim against Reco for indemnification or contribution should withstand Reco's motion for summary judgment. *See* Opp'n Mem. at 6, 11–12 (received Mar. 8, 1999). Given that the papers submitted by Reco deal exclusively with Reco's alleged liability to Skyhawk and Young and not to S.D. Warren, one has the impression that Third–Party Defendant Reco and Third–Party Plaintiffs Skyhawk and Young are ships passing in the night. The pattern of inartful pleading and argument in this case, *see Slater*, 187 F.R.D. at 188, continues.

Skyhawk and Young's somewhat confusing opposition to Reco's motion for summary judgment, however, was not wholly unprovoked by Reco. In the proposed order submitted by Reco with its Cross Notice of Motion for Summary Judgment, Reco includes the following language: "ORDERED, that summary judgment be granted in favor of third party defendant, Reco Constructors, Inc., dismissing the third party complaint and any *and all crossclaims against it.*" Reco Proposed Order (received Mar. 8, 1999) (emphasis added). Putting aside the issue of whether Skyhawk and Young have standing to assert a defense against summary judgment on behalf of S.D. Warren, who has not submitted papers in response to Reco's motion, I construe Reco's motion for summary judgment to relate solely to Skyhawk and Young's Third–Party claims and not to S.D. Warren's or any other party's crossclaims. I will interpret the arguments offered by Skyhawk and Young on S.D. Warren's behalf as if they had been offered on Skyhawk and Young's own behalf.

That being said, Skyhawk and Young concede that third parties are generally precluded by workers' compensation laws from seeking recovery from employers. *See* Opp'n Mem. at 9–10. Skyhawk and Young further maintain, however, that there are exceptions to this general rule and that employers can be held liable to

third parties where an independent ground for liability exists. *See id.* at 11–12. In this case, Skyhawk and Young contend that Reco expressly agreed to indemnify S.D. Warren in the event that S.D. Warren became liable to a Reco employee for injuries sustained while working at the S.D. Warren plant and that Reco contracted with S.D. Warren to keep the premises at S.D. Warren's facility safe. *See id.* at 3–5. Skyhawk and Young state that Reco, through its various agreements with S.D. Warren, stepped out of its role as a mere employer and created a basis on which third parties could hold Reco liable for the injuries suffered by Reco employees. *See id.* at 8, 11–12.

■ Before turning to the merits of these arguments, I must first determine whether Michigan, New Jersey, or Virginia law should be applied in resolving Reco's motion for summary judgment. *See Slater,* 187 F.R.D. at 193. " 'To make a choice of law, a federal court whose jurisdiction over a state claim is based on diversity, *Klaxon Co. v. Stentor Electric Manufacturing Co.,* [313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ], must apply the conflicts of law principles of the forum state.' " *Id.* (quoting *Rohm & Haas Co. v. Adco Chem. Co.,* 689 F.2d 424, 429 (3d Cir.1982)). " 'Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law.' " *Id.* (quoting *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir.1994)). "Similarly, 'the initial prong' of the New Jersey choice of law analysis 'entails an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis.' " *Id.* (quoting *Gantes v. Kason Corp.,* 145 N.J. 478, 484, 679 A.2d 106 (1996)). Reco and Skyhawk and Young agree that no conflict exists between the laws of Michigan, New Jersey, and Virginia concerning third party liability under each state's workers' compensation laws. *See* Mem. Supp. Reco Mot. Summ. J. at 6.; Opp'n Mem. at 9. My analysis of the workers' compensation statutes of these states, as

set forth below, substantially confirms Reco's and Skyhawk and Young's findings. Accordingly, I will consider the laws of Michigan, New Jersey, and Virginia in resolving Reco's motion for summary judgment. *See Slater,* 187 F.R.D. at 193.

■ The workers' compensation laws of all three states erect an absolute barrier to third-party claims for contribution against employers. *See Bieger v. Consolidation Coal Co.,* 650 F.Supp. 1294, 1296 (W.D.Va.1987); *Prosky v. National Acme Co.,* 404 F.Supp. 852, 854 (E.D.Mich.1975); *Ramos v. Browning Ferris Industries of South Jersey, Inc.,* 103 N.J. 177, 184, 510 A.2d 1152, 1155 (1986); *Dale v. Whiteman,* 388 Mich. 698, 708, 202 N.W.2d 797, 802 (1972); *Husted v. Consumers Power Co.,* 376 Mich. 41, 56, 135 N.W.2d 370, 377 (1965); *Port Authority v. Honeywell Protective Services, Honeywell, Inc.,* 222 N.J.Super. 11, 19, 535 A.2d 974, 977 (App. Div.1987); *Minster Machine Co. v. Diamond Stamping Co.,* 72 Mich.App. 58, 64–65, 248 N.W.2d 676, 680 (1976); *Nanasi v. General Motors Corp.,* 56 Mich.App. 652, 656, 224 N.W.2d 914, 916 (1974). Third-party claims for indemnification, on the other hand, are permitted in each state, although third parties are allowed to pursue such claims in only limited circumstances. For example, a third party may obtain indemnification from an employer in an instance where an employer has expressly agreed to indemnify the third party. *See Bieger,* 650 F.Supp. at 1296; *Burnette v. General Electric Co.,* 389 F.Supp. 1317, 1321 (W.D.Va.1975); *Ramos,* 103 N.J. at 191, 510 A.2d at 1159; *Dale,* 388 Mich. at 704, 202 N.W.2d at 800; *Port Authority,* 222 N.J.Super. at 19, 535 A.2d at 977; *Diekevers v. Brekel, Inc.,* 73 Mich. App. 78, 80, 250 N.W.2d 548, 549 (1976).

■ Skyhawk and Young cannot recover from Reco either for contribution or on a theory of express indemnification. Contribution is absolutely barred and although there may be an express indemnification agreement in this case, that agreement is between S.D. Warren and Reco, not Sky-

hawk and Reco. *See* Opp'n Mem., Ex. D. Skyhawk and Young have not produced any evidence that Reco entered into an express indemnification agreement with Skyhawk.

 This is not to say, however, that Reco is automatically entitled to summary judgment. Michigan and New Jersey recognize a right of third parties to seek indemnification from employers on an implied indemnification theory. *Ramos*, 103 N.J. at 188–89, 510 A.2d at 1158; *Dale*, 388 Mich. at 704, 202 N.W.2d at 800; *Port Authority*, 222 N.J.Super. at 20, 535 A.2d at 978; *Diekevers*, 73 Mich.App. at 80, 250 N.W.2d at 549. An implied right of indemnification, moreover, can arise from contract. *See Dale*, 388 Mich. at 704, 202 N.W.2d at 800; *Port Authority*, 222 N.J.Super. at 23–27, 535 A.2d at 979–82. For example, if a contractor expressly agrees to keep a work premises safe and an employee successfully sues the owner of the premises because of an injury resulting from the contractor's failure to keep the premises safe, the owner of the premises may bring a claim against the employer for indemnification. *See Port Authority*, 222 N.J.Super. at 23–27, 535 A.2d at 979–82.[4] Given that no express agreement for indemnification exists between Reco and Skyhawk and Young, Skyhawk and

Young's claim for indemnification is more plausible when cast as a claim based on an implied indemnification theory. Furthermore, Skyhawk and Young's papers can be read to make an argument for implied indemnification, since Skyhawk and Young repeatedly contend in their papers that Reco stepped out of its role as a mere employer through its various agreements with S.D. Warren. *See* Opp'n Mem. at 8, 11–12

 That being said, no genuine issue of material fact exists as to whether Skyhawk and Young have a right of implied indemnification against Reco, and Reco's motion for summary judgment shall be granted. *See Abraham*, 183 F.3d at 287. To succeed against an employer on an implied indemnification theory, a third party must show that his or her actions were not the actual, proximate cause of the employee's injuries. *See Prosky*, 404 F.Supp. at 855; *Ramos*, 103 N.J. at 188–89, 510 A.2d at 1158; *Dale*, 388 Mich. at 705, 202 N.W.2d at 800; *Port Authority*, 222 N.J.Super. at 20, 535 A.2d at 978; *Diekevers*, 73 Mich.App. at 81, 250 N.W.2d at 550; *Minster Machine Co.*, 72 Mich. App. at 62–63, 248 N.W.2d at 678–79; *Nanasi*, 56 Mich.App. at 659, 224 N.W.2d at 917. It must be demonstrated that al-

---

**4.** Virginia does not permit indemnification to be implied unless the proposed indemnitor may be liable in tort to the original plaintiff. *See Glover v. Johns–Manville Corp.*, 525 F.Supp. 894, 900–02 (E.D.Va.1979) (citing *Jennings v. Franz Torwegge Machine Works*, 347 F.Supp. 1288 (W.D.Va.1972); *Drumgoole v. Virginia Electric & Power Co.*, 170 F.Supp. 824 (E.D.Va.1959)); *Burnette*, 389 F.Supp. at 1321 (also citing *Jennings* ); *Virginia Electric & Power Co. v. K.F. Wilson*, 221 Va. 979, 980–82, 277 S.E.2d 149, 149–50 (1981). Employee suits against employers for work-related injuries are barred by Virginia's workers' compensation laws. *See Virginia Electric & Power Co.*, 221 Va. at 980–82, 277 S.E.2d at 149–50. Consequently, Virginia does not recognize third-party claims against employers based upon implied indemnification theories. *See id.* In other words, because Slater could not bring suit against Reco, Skyhawk and Young cannot seek indemnification from Reco.

That Virginia's law concerning indemnification conflicts with the laws of indemnification of Michigan and New Jersey does not make a difference for choice of law purposes. Because I find, as set forth below, that Skyhawk and Young do not have a claim for implied indemnification under Virginia, Michigan, or New Jersey law, the conflict between Virginia's law, on the one hand, and Michigan's and New Jersey's, on the other, amounts to a "false conflict." " 'Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict' and the Court should avoid the choice-of-law question.' " *Slater*, 187 F.R.D. at 193 (quoting *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997)); *see also Rohm & Haas Co.*, 689 F.2d at 429 ("When such a 'false conflict' exists, New Jersey conflicts of law rules permit the resolution of the case without a choice between the laws of the [three] states").

though liability may be imposed on the third party, that liability stems from a special legal relationship between the third party and the employer that permits liability to be imposed on the third party despite the employer's actual fault for the employee's injuries. *See Prosky,* 404 F.Supp. at 855; *Ramos,* 103 N.J. at 188–89, 510 A.2d at 1158; *Dale,* 388 Mich. at 705, 202 N.W.2d at 800; *Port Authority,* 222 N.J.Super. at 20, 535 A.2d at 978; *Diekevers,* 73 Mich.App. at 81, 250 N.W.2d at 550; *Minster Machine Co.,* 72 Mich. App. at .62–63, 248 N.W.2d at 678–79; *Nanasi,* 56 Mich.App. at 659, 224 N.W.2d at 917. For instance, indemnification may be sought by a third party where the third party was only vicariously liable for an employee injury actually caused by the employer. *See Prosky,* 404 F.Supp. at 855; *Ramos,* 103 N.J. at 188–89, 510 A.2d at 1158; *Dale,* 388 Mich. at 705, 202 N.W.2d at 800; *Port Authority,* 222 N.J.Super. at 20, 535 A.2d at 978; *Diekevers,* 73 Mich.App. at 81, 250 N.W.2d at 550; *Minster Machine Co.,* 72 Mich.App. at 62–63, 248 N.W.2d at 678–79; *Nanasi,* 56 Mich.App. at 659, 224 N.W.2d at 917. Likewise, where a contract gives rise to an implied right of indemnification, a third party can only recover against an employer if the he or she was not actively at fault in producing the employee's injuries. *Prosky,* 404 F.Supp. at 855; *Dale,* 388 Mich. at 705, 202 N.W.2d at 800; *Port Authority,* 222 N.J.Super. at 28–27, 535 A.2d at 982–83; *Diekevers,* 73 Mich.App. at 81, 250 N.W.2d at 550; *Minster Machine Co.,* 72 Mich.App. at 62–63, 248 N.W.2d at 678–79.

█ Skyhawk and Young have not produced any evidence to demonstrate that the liability they face justifies an indemnification claim against Reco. They have not shown, for example, that Reco at any point entered into a contract with Skyhawk and Young that would provide a basis for an indemnity action. Skyhawk and Young do offer evidence of an agreement between Reco and S.D. Warren in which Reco allegedly covenants with S.D. Warren to keep S.D. Warren's property safe for the duration of Reco's work there, *See* Opp'n Mem., Ex. D, but this agreement only provides a basis for indemnity for S.D. Warren and not Skyhawk or Young, who are not parties to the agreement. Nor have Skyhawk and Young introduced evidence that Skyhawk and Young could be held vicariously liable for Reco's alleged negligence or that some statute or common-law rule could operate to impose liability on Skyhawk and Young despite Reco's actual fault.[5] Slater alleges direct liability on the part of Skyhawk and Young, claiming, *inter alia,* that Young operated his truck negligently and that Skyhawk negligently hired and trained Young. *See* Am. Compl. at 4. If the allegations in Slater's Complaint against Skyhawk and Young are proven and Skyhawk and Young are found to be liable in negligence for Slater's injuries, then Skyhawk and Young are liable for their own active negligence, and they cannot obtain indemnification from Reco under the implied indemnification laws of Michigan and New Jersey. If, however, a jury found that some other party's conduct was the proximate cause of Slater's injuries, then Skyhawk and Young have a complete defense to Slater's original action and cannot obtain indemnification from Reco. Accordingly, I shall grant the motion for summary judgment of Third–Party Defendant Reco Constructors, Inc.

### B. *Skyhawk and Young's Motion for A Determination of Choice of Law*

Skyhawk and Young argue that New Jersey's law of damages should apply to this case. *See* Mem. Supp. Mot. Choice of Law at 8–12 (received Mar. 18, 1999). Slater asserts that Virginia's law of damages should be applied instead. *See* Slater Br. Opp'n New Jersey Law at 4, 10–21 (received Mar. 18, 1999). That the parties have taken the positions they have is un-

---

**5.** In fact, I have already held that Skyhawk and Young can obtain recovery from Reco only if Skyhawk and Young are first held liable for Slater's alleged injuries. *See Slater,* 187 F.R.D. at 203

surprising. Defendants facing liability under New Jersey's law of damages are afforded strong protections against large damage awards. A plaintiff's net income is used to calculate lost earnings, future lost wages are reduced to present value, and benefits from a broad range of collateral sources like health insurance policies and social security are deducted from damage awards. *See* N.J.S.A. 2A:15–97 (stating that benefits, with the exception of workers' compensation benefits and proceeds from life insurance policies, are deducted from personal injury damage awards under New Jersey law); *Poust v. Huntleigh Healthcare,* 998 F.Supp. 478, 499 (D.N.J.1998) (Cooper, J.) (noting that future lost earnings are derived from "probable net earnings, take home pay, the amount left after taxes are deducted" and that "New Jersey also requires that future damages be reduced to present value"); *Ruff v. Weintraub,* 105 N.J. 233, 238, 519 A.2d 1384, 1386 (1987) (holding that "the proper measure of damages for lost income in personal-injury cases is net income after taxes"). Virginia's law of damages, on the other hand, provides for very generous plaintiff's awards. A plaintiff's gross income is used to determine lost earnings, future lost wages are not reduced to present value, and benefits from collateral sources are not deducted from damage awards. *See Chaffin v. Southeastern Transport, Inc.,* Civil No. 95–290–R, 1996 U.S. Dist. LEXIS 12615, at *6, *9–*10 (June 11, 1996 W.D.Va.) (discounting a Virginia plaintiff's damage award for lost future earnings to present value); *Schickling v. Aspinall,* 235 Va. 472, 475, 369 S.E.2d 172, 174 (1988) (noting that Virginia courts have applied the collateral source rule in tort cases for over 100 years); *Hoge v. Anderson,* 200 Va. 364, 368, 106 S.E.2d 121, 124 (1958) (holding that in assessing damages for loss of wages resulting from personal injury "it· is the gross pay and not the net or 'take home pay' that controls"). Skyhawk and Young seek the application of New Jersey's law of damages because it would most limit their liability exposure, while Slater argues for the application of Virginia's law of damages because it would result in the largest possible plaintiff's award.

Neither party advocates that Michigan's law of damages be applied, presumably because Michigan's law of damages occupies a middle ground between the law of damages of New Jersey and the law of damages of Virginia. Under Michigan's law of damages, lost earnings are based upon plaintiff's gross income. *See Gorelick v. Department of State Highways,* 127 Mich.App. 324, 341–42, 339 N.W.2d 635, 644 (1983) (holding that "in fixing damages for lost future earning capacity resulting from personal injuries, courts must disregard the income tax consequences"). On the other hand, Michigan courts discount future lost wages to present value and subtract benefits from collateral sources from damage awards. *See* M.C.L.A. § 600.6303(1), (4) (stating that benefits from collateral sources are to be deducted from damage awards except where the provider of the collateral source benefits also has a lien against the proceeds of the plaintiff's potential damage awards); M.C.L.A. § 600.6306(1) (requiring that damage awards for future damages be discounted for present value); *Heinz v. Chicago Road Inv. Co.,* 216 Mich.App. 289, 296–97, 549 N.W.2d 47, 51 (1996) (explaining how Michigan's collateral source rule prevents plaintiff's from obtaining double recoveries).

In determining which law of damages should be applied in this case, I apply the conflicts of law principles of New Jersey, the forum state. *See Slater,* 187 F.R.D. at 193 (quoting *Rohm & Haas Co.,* 689 F.2d at 429). I must first determine, however, whether a conflict exists. *See id.* (quoting *Lucker· Mfg.,* 23 F.3d at 813 and *Gantes,* 145 N.J. at 484, 679 A.2d 106). As the discussion set forth above reflects, there is substantial conflict between damages laws of New Jersey, Virginia, and Michigan. Consequently, I must determine which law of damages I am required to apply in this

case under the conflict of laws rules of New Jersey.

 "In tort cases, New Jersey has rejected the rule for determining choice of law based on the place where the wrong occurred" and has "adopted the more flexible governmentalinterest analysis in choice of law decisions." *Veazey v. Doremus*, 103 N.J. 244, 247, 510 A.2d 1187, 1189 (1986). "Under that analysis, the determinative law is that of the state with the greatest interest in governing the particular issue." *Id.* at 248, 510 A.2d at 1189. Whether or not a conflict exists is to be determined on an issue-by-issue basis. *See id.,* 510 A.2d at 1189. Once it is decided that there is a conflict between two or more state's laws and a choice of law has to be made, "the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.,* 510 A.2d at 1189. "[T]he qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." *Id.,* 510 A.2d at 1189–90.

 Broadly speaking, New Jersey courts generally apply the law of the state in which an injury occurred where one of the parties to the action is also a domiciliary of that state. For example, where torts have occurred in New Jersey and one of the parties in the action has been a New Jersey domiciliary, courts applying New Jersey's choice-of-law rules have applied New Jersey law. *See, e.g., Amoroso v. Burdette Tomlin Mem'l Hospital,* 901 F.Supp. 900, 902 (D.N.J.1995) (Irenas, J.) (applying New Jersey law in a suit involving New Jersey defendants and a stabbing in New Jersey of a Pennsylvania resident); *Colley v. Harvey Cedars Marina,* 422 F.Supp. 953, 954, 957 (D.N.J.1976) (Brotman, J.) (using New Jersey in a case involving a Pennsylvania plaintiff, New Jersey defendants, and a drowning off the coast of New Jersey). Conversely, where torts have occurred in other states and one of the parties has been a domiciliary of that other state, New Jersey courts have

repaired to the laws of that state. *See, e.g., O'Connor v. Busch Gardens,* 255 N.J.Super. 545, 547, 605 A.2d 773, 774 (App.Div.1992) (applying Virginia law where a New Jersey plaintiff was tortiously injured at a Virginia amusement park). In cases where none of the parties to the action are domiciliaries of the state where the injury occurred but are domiciliaries of the same state, New Jersey has applied the law of the state of the domiciliaries. *See, e.g., Veazey,* 103 N.J. at 249–51, 510 A.2d at 1190–91 (ruling in favor of the application of Florida law in a case where the plaintiff and defendant, both Florida residents, were involved in an automobile accident in New Jersey); *But see Fu v. Fu,* 160 N.J. 108, 134, 733 A.2d 1133, 1147–49 (1999) (holding that New York law would be applied in case involving a New York automobile accident and New Jersey parties); *Moye v. Palma,* 263 N.J.Super. 287, 294–95, 622 A.2d 935 (same).

 This, however, is a different case. In this case a Virginia citizen, Slater, has filed a suit against a New Jersey corporation, Skyhawk, and a New Jersey citizen, Young, over conduct occurring in Michigan. Neither party contesting the choice of law issue is a domiciliary of the state where the injury occurred, nor are the parties domiciliaries of the same state. Courts that have applied New Jersey choice of law rules to similar circumstances have arrived at different conclusions concerning which state's law should be applied in such circumstances. In *Poust,* a case upon which Skyhawk and Young rely heavily, the court applied New Jersey law where a Pennsylvania plaintiff sued a New Jersey defendant and the tort involved occurred at a Naval hospital in Bethesda, Maryland. *See Poust,* 998 F.Supp. at 499–500. The court in *Mowrey v. Duriron Co.,* 260 N.J.Super. 402, 616 A.2d 1300 (App. Div.1992), however, determined that it would apply Connecticut law in a case involving a defendant incorporated in New Jersey, a plaintiff domiciled in Rhode Island and a tort that occurred in Connecti-

cut. *See id.* at 413–16, 616 A.2d at 1305–06. Given the fact-intensive nature of the choice-of-law analysis prescribed by New Jersey law, it is not surprising that cases involving somewhat similar factual settings result in different choice of law decisions. *See Fu,* 160 N.J. at 138–39, 733 A.2d at 1149–50. Consequently, I shall now consider the policies underlying each state's laws and examine how these policies relate, qualitatively, to each state's contacts to this litigation and to the parties in this case.

### (1) New Jersey's Law of Damages

New Jersey has two contacts with this litigation. It is the forum for the litigation and the domicile of the defendants. A state's status as the forum for a litigation is irrelevant to a court's choice-of-law decision. *See Fu v. Fu,* 160 N.J. at 130, 733 A.2d at 1145; *O'Connor,* 255 N.J.Super. at 549, 605 A.2d at 774. As a result, my focus will be on the relationship between the policy goals of New Jersey's law of damages and Skyhawk's and Young's status as defendant-domiciliaries of New Jersey.

New Jersey's law of damages is motivated in part by the belief that plaintiffs in personal injury cases should not be permitted to experience an economic windfall as a result of someone else's tortious conduct. In holding that net income is the proper measure of damages for lost income, the New Jersey Supreme Court explained that its decision was "based on the principle that damages in personal-injury actions should reflect, as closely as possible, the plaintiff's actual loss." *Ruff,* 105 N.J. at 238, 519 A.2d at 1386–87. Interpreted solely as a policy whose objective is to prevent plaintiff's from securing compensation greater than their actual loss, the policy underlying New Jersey's law of damages does not justify the application of New Jersey's damages law in this case. New Jersey has little interest in ensuring that a non-domiciliary plaintiff, in this case Slater, is prevented from obtaining a double recovery.

New Jersey's law of damages, however, is as much about protecting defendants as it is about ensuring that plaintiffs do not enjoy windfalls. Courts have recognized that New Jersey, as a result of its laws limiting the recovery of damages, has an interest in protecting its citizen-defendants from being required to overpay plaintiffs. *See Poust,* 998 F.Supp. at 499–500; *Colley,* 422 F.Supp. at 956–57. Because Skyhawk and Young are domiciliary defendants, the policy goals of New Jersey's law of damages would be furthered by the application of New Jersey law in this case. Skyhawk and Young would be protected from providing Slater with the windfall that Virginia law seems to permit but which New Jersey law forbids.

New Jersey's interest in having its damages law applied in this case, however, is not limited to its interest in Skyhawk's and Young's financial protection. New Jersey has a systemic interest in having its law of damages applied in this case. In *Thomas v. Toys "R" Us, Inc.,* 282 N.J.Super. 569, 660 A.2d 1236 (App.Div.1995), the court described the purpose behind New Jersey's decision to deduct benefits deriving from collateral sources from damage awards this way:

> The overriding legislative intent of the Legislature in adopting N.J.S.A. 2A:15–97 was to prevent a claimant from receiving benefits beyond the damages awarded under a judgment entered and to relieve defendants and insurance companies from having to compensate plaintiffs for damages in excess of the total amounts of their losses.

*Thomas,* 282 N.J.Super. at 584, 660 A.2d at 1243–44 (citing *Kiss. v. Jacob,* 268 N.J.Super. 235, 247, 633 A.2d 544, 549 (App.Div.1993), *rev'd on other grounds, Kiss v. Jacob,* 138 N.J. 278, 650 A.2d 336 (1994)); *see also Kiss,* 138 N.J. at 282–83, 650 A.2d at 338; *Fayer v. Keene Corp.,* 311 N.J.Super. 200, 208, 709 A.2d 808, 811 (App.Div.1998). The New Jersey legislature has recognized that the costs of large damage awards are ultimately borne by all of New Jersey's citizens because they are

passed on to them by insurance companies through higher premiums. Accordingly, it passed legislation that prevents plaintiffs from receiving compensation greater than their actual losses in an effort to place a cap on the size of tort damage awards. Skyhawk is a New Jersey trucking company, and Young is a driver for Skyhawk. Trucking companies deliver consumer goods all over the country, constantly operate in foreign jurisdictions, and are frequently exposed to tort liability. New Jersey has an obvious interest in having its law of damages applied in cases where its trucking companies and its truckers are defendants. All New Jersey residents are protected from higher insurance premiums when New Jersey's damages law is applied in a case such as this one.

In sum, New Jersey is an interested state. It has an express interest in protecting citizen-defendants from the burden of overpaying plaintiffs and in insulating all of its citizens from the higher insurance premiums that result from large tort damage awards. These interests would be furthered by the application of New Jersey's laws concerning tort damages in this case, which involves two defendant-domiciliaries.

### (2) Virginia's Law of Damages

 Virginia has only one contact to this litigation. It is the domicile of the plaintiff, Slater. "There are two primary governmental policies and interests recognized in choice-of-law determinations involving torts. They are a state's interests in assuring full and fair compensation for its injured domiciliaries and the deterrence of tortious misconduct on the part of its domiciliaries." *Marinelli v. K–Mart Corp.*, 318 N.J.Super. 554, 555–56, 724 A.2d 806, 812–13 (App.Div.1999) (citations omitted). Both full compensation and deterrence are objectives of Virginia's plaintiff-friendly damages law. The Supreme Court of Virginia explains why Virginia courts do not subtract collateral source proceeds from damage awards this way:

> The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

*Schickling*, 235 Va. at 474–75, 369 S.E.2d at 174.

Inasmuch as the purpose behind Virginia's generous damages law is full compensation for Virginia plaintiffs, Virginia's interest in having its law applied in this case is analogous to New Jersey's interest in having New Jersey law applied. Just as New Jersey has expressed an interest in protecting New Jersey defendants from large damage awards, Virginia has expressed an interest in ensuring that Virginia plaintiffs are fully compensated for their injuries. This interest is so strong, in fact, that Virginia is willing to accept that plaintiffs will sometimes receive windfalls as a result of its damages law. Virginia's express interest in full compensation for its plaintiffs would be furthered by the application of Virginia law in this case because Slater is a Virginia citizen and the application of Virginia law would guarantee him a larger tort award than if either New Jersey or Michigan law were applied.

Insofar as the objective of Virginia's damages law is deterrence, however, Virginia has no real interest in having its law applied in this case. The deterrent value of Virginia's damages law is at its zenith when applied to domiciliary defendants who are repeatedly subject to Virginia tort liability, but at its nadir when applied to non-domiciliary defendants who have only limited contact with Virginia and Virginia citizens. Virginia has little interest in deterring the tortious behavior of out-of-state defendants whose exposure to liability under Virginia law is limited. There is no indication that either Skyhawk or Young has any regular contact with Virginia or its

citizens. Consequently, the deterrence goals of Virginia's damages law would not be served by the application of Virginia law here.

In comparing New Jersey's interest in having New Jersey law apply in this case with Virginia's interest in having Virginia law apply, I conclude that New Jersey's interest is greater. If the only governmental interests in this case were New Jersey's interest in limiting the damage liability of its defendants and Virginia's interest in securing full compensation for its plaintiffs, the choice-of-law decision I must make would be more difficult than it is. It would be impossible to say whether New Jersey had a greater interest in protecting its defendants or Virginia had a greater interest in safeguarding its plaintiffs. *See Pollock v. Barrickman,* 610 F.Supp. 878, 879–880 (D.N.J.1985) (Gerry, J.). New Jersey's damage law is motivated in part, however, out of the concern that excessive tort awards levied against New Jersey defendants harm all New Jersey citizens. The costs of tort liability are passed on to all New Jersey citizens by the insurance companies who are forced to pay such awards. New Jersey has an interest in having its law applied—for the benefit of all of its citizens—in cases like this one where a defendant-domiciliary faces tort liability. At the same time, the deterrence objectives of Virginia's law of damages would not be furthered by the application of Virginia law in this case. As between New Jersey law and Virginia law, therefore, I hold that New Jersey's law of damages should be applied in this case.

*(3) Michigan's Law of Damages*

Comparing New Jersey's interest in having its law applied in this case with Michigan's interest in having its damages law applied, I conclude that I must apply New Jersey law. Michigan has two connections to this litigation. First, it was the situs of the injury. Second, S.D. Warren is a Michigan company, who, although dismissed as a direct defendant in this case, *see Slater,* 187 F.R.D. at 199, remains as a Third–Party Defendant, subject to Sky-hawk and Young's claims for contribution and indemnification. To begin with, I note that although "New Jersey has rejected the rule for determining choice of law based on the place where the wrong occurred," *Veazey,* 103 N.J. at 247, 510 A.2d at 1189, the place of injury may still be an important factor in resolving choice-of-law questions. *See Amoroso,* 901 F.Supp. at 904–05; *Mowrey,* 260 N.J.Super. at 413, 616 A.2d at 1305. Whether or not the law of the place of injury should be applied depends largely on the type of relationship that exists between the parties involved in the case and the place of injury. For example, if the fact that the injury in this case occurred in Michigan is merely fortuitous, then Michigan's law of damages likely should not be applied in this case, whereas if Slater or Skyhawk had some regular contact with Michigan or if one of them was a Michigan domiciliary, then Michigan's law of damages more likely should be applied. *See Amoroso,* 901 F.Supp. at 905 (citing *Moye,* 263 N.J.Super. at 292, 622 A.2d 935 at 938; *Veazey,* 103 N.J. at 250, 510 A.2d at 1190–91). In other words, a decision to apply or not to apply the law of the place of injury requires an analysis of the relationship between the place of injury, its laws, and the parties involved in an action.

That being said, Michigan has only a limited interest in having its damages law applied in this case. The goal of Michigan's law of damages is to prevent double recovery on the part of plaintiffs. *See Heinz,* 216 Mich.App. at 306, 549 N.W.2d at 55. The plaintiff in this case, however, is a Virginia domiciliary. Michigan has little interest in whether a Virginia domiciliary receives a windfall in this case.

Moreover, while it might be argued that Michigan has an interest in deterring unsafe property conditions and unsafe conduct by Michigan property owners, *see O'Connor,* 255 N.J.Super. at 549, 605 A.2d at 775, this interest would not be significantly furthered by the application of Michigan damages law in this case. In *O'Connor,* Virginia law was applied in a case involving a New Jersey plaintiff in-

jured on a ride at Busch Gardens, a Virginia amusement park. *See id.* at 559–50, 605 A.2d at 775. The *O'Connor* court had to decide whether to apply New Jersey's comparative negligence law or Virginia's contributory negligence law. The choice of law decision that had to be made was intimately tied to Virginia's deterrence interests since the application of Virginia's contributory negligence rule could insulate Busch Gardens from all liability on a showing that O'Connor, the plaintiff, was contributorily negligent.

Michigan's deterrence interest is much less closely tied to the choice of law decision to be made in this case. First, the deterrence interest in imposing liability at all is much greater than the deterrence interest in awarding a greater or lesser amount of damages once liability has already been decided. Second, the direct defendant in this case is a domiciliary of New Jersey, not of Michigan. While S.D. Warren is still involved in this litigation, the primary burden of a damage award will be borne by Skyhawk and Young. This burden may or may not be passed on to S.D. Warren. Michigan's interest in having its damages law apply in this case is diminished by the fact that none of the primary parties to the litigation are Michigan domiciliaries.

Comparatively speaking, New Jersey's interest in having its law of damages applied in this case is stronger than Michigan's interest in having Michigan law applied. While Michigan has no interest in the amount of compensation Slater receives as part of a damage award and a limited deterrence interest, New Jersey has a strong interest in not only protecting the defendant domiciliaries from excessive damages liability but also in safeguarding all New Jersey residents from the costs which they all incur when New Jersey domiciliaries are required to pay tort awards.

It should be noted New Jersey's damages law can be applied in this case even if the law of liability applied is Michigan's. Slater states in his papers (and Skyhawk

and Young do not object) that the parties to this litigation have agreed that Michigan law will apply with respect to liability. *See* Slater Br. Opp'n New Jersey Law at 4, 16. Federal courts interpreting New Jersey choice-of-law rules have held that it is the policy of New Jersey courts to apply the damages law of the state whose liability law controls. *See Draper v. Airco, Inc.,* 580 F.2d 91, 97–98 (3d Cir.1978); *A–S Development, Inc. v. W.R. Grace Land Corp.,* 537 F.Supp. 549, 556 n. 6 (D.N.J. 1982) (Thompson, J.). *But see Pollock,* 610 F.Supp. at 879–80 (applying New Jersey negligence law and Pennsylvania damages law). That being said, there is an exception to this rule in cases where neither the plaintiff nor the defendant are domiciliaries of the state in which the injury occurred. *See Draper,* 580 F.2d at 97. This exception comports with New Jersey's general rule that choice-of-law determinations should be made on an issue-by-issue basis, *see Veazey,* 103 N.J. at 248, 510 A.2d at 1189, and my observation that no matter what agreement was made in this case concerning liability, a governmental interest analysis requires that New Jersey's damages law should be applied. Moreover, this case fits this exception.

## III. CONCLUSION

For the reasons set forth above, I find that Skyhawk and Young are barred from seeking recovery against Reco by New Jersey, Virginia, and Michigan's workers' compensation statutes. I also find that New Jersey has the greatest interest in having its law of damages applied in this case and that under New Jersey's choice-of-law rules, I am required to apply New Jersey's law of damages. Accordingly, I shall grant Reco's motion for summary judgment and Skyhawk and Young's motion to have New Jersey law applied in this case.

I will enter an appropriate order.